UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHELE COLELLA and DENISE DUSSAULT, <br><br> *Plaintiffs*, <br><br> v. <br><br> THE REPUBLIC OF ARGENTINA, <br><br> *Defendant.* | 04-cv-2710 (LAP) <br> ("*Colella*") |
| MARCELO RUBEN RIGUIERO, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> THE REPUBLIC OF ARGENTINA, <br><br> *Defendant.* | 05-cv-3089 (LAP) <br> ("*Rigueiro*") |
| ANTONIO FORGIONE, et al, <br><br> *Plaintiffs*, <br><br> v. <br><br> THE REPUBLIC OF ARGENTINA, <br><br> *Defendant.* | 06-cv-15171 (LAP) <br> ("*Forgione*") |

**MEMORANDUM OF LAW OF THE REPUBLIC OF ARGENTINA IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CLAIMS AND VACATE PLAINTIFFS' JUDGMENTS**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Carmine D. Boccuzzi, Jr.
Rahul Mukhi
One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Of Counsel*:
Rathna J. Ramamurthi

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ................................................................................................................ 2

    A.  Plaintiffs' Claims And Judgments Against The Republic ...................................... 2

    B.  Plaintiffs' Counsel Gleizer Withdraws From Representation
        Because Of Plaintiffs' "Wrongful" Conduct .......................................................... 4

    C.  By Failing To Produce The Bonds, Plaintiffs Breach An
        Agreement With The Republic Under Which They Would
        Receive Over Seven Million Dollars ...................................................................... 5

    D.  The Republic Tries To Determine The Status Of Claims......................................... 7

ARGUMENT ..................................................................................................................... 8

I.   ALL OF PLAINTIFFS' CLAIMS SHOULD BE DISMISSED AND
    BOTH OF PLAINTIFFS' JUDGMENTS VACATED FOR FRAUD ON
    THE COURT ............................................................................................................. 8

    A.  Plaintiffs Have Committed Fraud On The Court.................................................... 8

    B.  Dismissal With Prejudice Is An Appropriate Remedy ......................................... 13

        (1)  Plaintiffs' Misconduct Was Performed Intentionally And
             In Bad Faith ............................................................................................... 13

        (2)  Plaintiffs' Pattern Of Misbehavior Prejudiced The
             Republic .................................................................................................... 14

        (3)  Far From Being Corrected, Plaintiffs' Misconduct
             Continues .................................................................................................. 15

II.  PLAINTIFFS' *COLELLA* AND *RIGUEIRO* JUDGMENTS ARE
    ADDITIONALLY SUBJECT TO VACATUR PURSUANT TO RULE
    60(b)(6) ................................................................................................................... 17

III. "MR. FORGIONE'S" CLAIM IS ADDITIONALLY SUBJECT TO
    DISMISSAL PURSUANT TO RULE 41(b)...................................................... 19

CONCLUSION................................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**      **Page(s)**

*Abbott Labs, et al., v. Adelphia Supply USA, et al.*,
No. 15 Civ. 5826, 2019 WL 3281324 (E.D.N.Y. May 2, 2019) ........................................ 13

*Almeciga v. Ctr. for Investigative Reporting, Inc.*,
185 F. Supp. 3d 401 (S.D.N.Y. 2016) ................................................................................. 13

*Aoude v. Mobil Oil Corp.*,
892 F.2d 1115 (1st Cir. 1989) ....................................................................................... *passim*

*Aurelius Capital Master, Ltd. v. Republic of Argentina*,
644 F. App'x 98 (2d Cir. 2016) ........................................................................................... 18

*Brecher v. Republic of Argentina*,
806 F.3d 22 (2d Cir. 2015) .................................................................................................. 16

*Cerruti 1881 S.A. v. Cerruti, Inc.*,
169 F.R.D. 573 (S.D.N.Y. 1996) .................................................................................... 10-11

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) .............................................................................................................. 13

*Charell v. Nichols*,
No. 97 Civ. 5552 (LAP), 1999 WL 253642 (S.D.N.Y. Apr. 29, 1999) .............................. 19

*Ctr. for Monitoring Impact of Peace, Inc. v. Ctr. for Monitoring the
Impact of Peace, R.A.*, No. 06 Civ. 2390 (LAP), 2010 WL 3958823
(S.D.N.Y. Sept. 24, 2010) .............................................................................................. 19-20

*DAG Jewish Directories, Inc. v. Y & R Media, LLC*,
No. 09 Civ. 7802, 2010 WL 3219292 (S.D.N.Y. Aug. 12, 2010) ...................................... 14, 15-16

*Good Luck Nursing Home, Inc. v. Harris*,
636 F.2d 572 (D.C. Cir. 1980) ........................................................................................... 17

*Hargrove v. Riley*,
Civil Action No. CV-04-4587, 2007 WL 389003 (E.D.N.Y. Jan. 31, 2007) .................... 10

*ISC Holding AG v. Nobel Biocare Fin. AG*,
688 F.3d 98 (2d Cir. 2012) .................................................................................................. 17

**Cases**                                                                        **Page(s)**

*Jung v. Neschis*,
No. 01 Civ. 6993, 2009 WL 762835 (S.D.N.Y. Mar. 23, 2009) ........................ 9

*Lawrence v. City of New York*,
No. 15 Civ. 8947, 2018 WL 3611963 (S.D.N.Y. July 27, 2018) ...................... *passim*

*Link v. Wabash R.R. Co.*,
370 U.S. 626 (1962) ............................................................................... 19

*McAllister v. Garrett*,
No. 10 Civ. 03828 (LAP) (HBP), 2015 WL 1623826 (S.D.N.Y. Mar. 11, 2015) ............. 19

*McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*,
191 F. Supp. 2d 440 (S.D.N.Y. 2002) ........................................................... 9

*N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.*,
432 F. App'x 25 (2d Cir. 2011) .................................................................. 9

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*,
427 U.S. 639 (1976) ............................................................................... 15

*Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*,
663 F.2d 371 (2d Cir. 1981) ...................................................................... 16

*Polit v. Glob. Foods Int'l Corp.*,
No. 14 Civ. 7360, 2016 WL 632251 (S.D.N.Y. Feb. 17, 2016) ...................... 18

*Quevedo v. Postmaster, U.S. Postal Serv.*,
774 F. Supp. 837 (S.D.N.Y. 1991) ............................................................. 18

*Ritoper v. Republic of Argentina*,
No. 07 Civ. 6426 (LAP) (S.D.N.Y. July 24, 2018), ECF No. 17 ...................... 18

*Scholastic, Inc. v. Stouffer*,
221 F. Supp. 2d 425 (S.D.N.Y. 2002), *aff'd*, 81 F. App'x 396 (2d Cir. 2003) ................. 10

*Shangold v. Walt Disney Co.*,
No. 03 Civ. 9522, 2006 WL 71672 (S.D.N.Y. Jan. 12, 2006)
*aff'd* 275 F. App'x 72 (2d Cir. 2008) ................................................... 9-10, 13, 15

**Cases**                                                                     **Page(s)**

*U.S. ex rel. Pervez v. Maimonides Med. Ctr.*,
No. 06 Civ. 4989 (LAP), 2010 WL 890236 (S.D.N.Y. Mar. 9, 2010),
*aff'd*, 415 F. App'x 316 (2d Cir. 2011).................................................................. 20

*United States v. Cirami*,
563 F.2d 26 (2d Cir. 1977)....................................................................................... 17

**Rules and Statutes**

Fed. R. Civ. P. 60(b)(6)............................................................................................. 17

Fed. R. Civ. P. 41(b) ................................................................................................. 18

Defendant the Republic of Argentina (the "Republic") respectfully submits this memorandum of law in support of its motion to dismiss the claims and vacate the judgments of plaintiffs Michele Colella and Denise Dussault ("Plaintiffs") in the above-captioned cases, pursuant to the Court's inherent authority and Federal Rules of Civil Procedure 60 and 41.

## PRELIMINARY STATEMENT

Plaintiffs Colella and Dussault brought claims against the Republic in multiple cases, through what now appears to be a fraudulent scheme spanning several years to obtain duplicative judgments using falsified documents. A bank officer confirmed in an sworn declaration that just a few months ago, Plaintiffs submitted a false account statement to the Court in an attempt to prove purported bond ownership. Plaintiffs have since doubled down on their fraud, submitting a false apostilled account statement, refusing to admit to any misconduct, threatening police action against the bank declarant, and seeking to enforce their judgments in other jurisdictions.

This is not the first time. Years ago, Plaintiffs submitted a false account statement under the fake name "Antonio Forgione" in an attempt to recover twice from the Republic on the same bonds. When the fraud came to light, Plaintiffs submitted another false account statement, insisted they were not at fault, and even claimed *they* were the real victims. And in 2016, Plaintiffs tried to fraudulently recover from the Republic via the Republic's 2016 *Propuesta*, claiming to be interested in settling their bond claims for over seven million dollars, but failing to ever deliver the bonds. The Republic has entered over 1,000 settlement agreements and made timely payment, with no other bondholder doing the same. The Republic has consistently expressed concerns about authenticity in all of Plaintiffs' cases, and Plaintiffs' recent conduct confirms that those concerns were warranted.

Plaintiffs' intentional, repeated submission of falsified documents and other misrepresentations with no remorse constitute fraud on the Court. "[A] federal district court

possesses the inherent power to deny the court's processes to one who defiles the judicial system by committing a fraud on the court." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989). Accordingly, all of Plaintiffs claims should be dismissed and both of Plaintiffs' judgments vacated. Given the extraordinary nature of Plaintiffs' continuing malfeasance, Plaintiffs' judgments are additionally subject to vacatur pursuant to Federal Rule of Civil Procedure 60(b)(6). Finally, "Mr. Forgione's" claim, for which a judgment was not entered, is also subject to dismissal for failure to prosecute under Federal Rule of Civil Procedure 41(b).

## BACKGROUND

### A. Plaintiffs' Claims And Judgments Against The Republic

*Colella*, **No. 04 Civ. 2710**. Plaintiffs, represented by Guillermo Gleizer ("Gleizer"), filed *Colella* in April 2004 based on purported ownership of $3.7 million of bond ISIN US040114AN02 and $850,000 of bond ISIN US040114AZ32. *See* Pls.' Cert. (June 10, 2004); Pls.' Decl. (Aug. 11, 2004); Pls.' Decl. (Feb. 24, 2006) (Ex. O).[1] When Plaintiffs moved for summary judgment, the Republic objected that Plaintiffs' purported bond ownership documents were "improperly certified or authenticated." Op. at 6 (Feb. 16, 2006) (Ex. N); Pls.' Decl. ¶ 10, (Aug. 11, 2004) (Ex. O) (Plaintiffs claiming they were not guilty of "forging documents and then having them certified and apostilled to make them look real"). The Court entered a judgment for $6,787,965.28, J. (June 1, 2006) (Ex. M), based on its finding that Plaintiffs had "presented a facially valid bank statement." Op. at 6 (Feb. 16, 2006) (Ex. N). Facial validity may have been sufficient then, but recent developments—most notably the sworn declaration by bank official

---

[1] Unless otherwise noted, all exhibits accompany the Declaration of Rathna J. Ramamurthi, which is being submitted today, and all citations are to the *Colella* docket.

Raffaele Fiorentino, *see* Fiorentino Decl. (July 18, 2019) (Ex. A)—undermine Plaintiffs' claims that they hold the bonds.

**Rigueiro, No. 05 Civ. 3089.**  Plaintiffs Colella and Dussault, among others, represented by Dreier LLP, commenced *Rigueiro* in March 2005, based on purported co-ownership of $1.3 million of bond ISIN US040114AN02 (the "AN02 Claim").  *See* Decl. of M. Colella in Supp. of Mot. for Summ. J. (Jan. 17, 2006) (Ex. L).  The Republic noted the AN02 Claim may be duplicative of Plaintiffs' claim in *Colella* for $3.7 million of the same ISIN.  Mem. of Law of the Republic in Opp. to Pls.' Mot. for Summ. J & to Strike Defs.' Discovery Requests at 4, *Rigueiro* (Apr. 7, 2006) (Ex. K).  Plaintiffs responded that the account statements they submitted showed the bond interests were unique, Reply Mem. of Law in Supp. of Pls.' Mot. for Summ. J. & to Strike Defs.' Discovery Requests at 7-8, *Rigueiro* (Apr. 26, 2006) (Ex. J)—a conclusion less certain now, given Plaintiffs' evident consistent fabrication of documents.  Without addressing this, the Court entered an amended judgment in January 2007.  Am. J., *Rigueiro* (Jan. 17, 2007) (Ex. I).  All of the *Rigueiro* claims except Plaintiffs' AN02 claim have since been resolved.

**Forgione, No. 06 Civ. 15171.**  Plaintiffs, represented by Gleizer, seemingly filed the same AN02 Claim in the separate *Forgione* action under a fake name—Antonio Forgione.[2]  As Gleizer stated, Plaintiffs "invented this Antonio Forgione" and "lied to this Court."  Hr'g Tr. at 4:26-5:3 (Sept. 19, 2011), ECF No. 46.  "Mr. Forgione" submitted an account statement substantially the same as Plaintiffs' *Rigueiro* account statement, but with a different name and address.  *See* Pl.'s Decl., *Forgione* (July 23, 2007) (Ex. G).

---

[2] "Mr. Forgione" retained Gleizer on the same day and in the same agreement where Plaintiff Denise Dussault retained Gleizer for a separate action, *Dussault v. Republic of Argentina*, No. 06 Civ. 13085.  *See* Retainer Agreement at 1, *Forgione* (Aug. 22, 2006) (Ex. H).

The Republic objected to entry of a judgment for "Mr. Forgione" based on irregularities in his "account statement." *See* Letter from C. Boccuzzi to G. Gleizer, *Forgione* (Sept. 28, 2007) (Ex. F). For example, while the "account statement" was dated March 31, 2007, it showed beginning and ending balances as of June 2007, with a note that "[t]he end of the year is the time that traditionally invites us to stop to think for one second and *consider what the year 2004 has brought to us*." *Id.* at 1 (emphasis added). "Mr. Forgione" then submitted a second "account statement," with the inconsistencies corrected. *See* Pl.'s Decl., *Forgione* (Nov. 7, 2011) (Ex. G). The head of the Legal Department of the bank named in the account statements (Giuseppe Formica, Banca Carige S.P.A.) explained in a sworn statement that both account statements were inauthentic and created by altering the name and address on Plaintiffs Colella and Dussault's account statements. *See* Formica Decl., *Forgione* (Nov. 12, 2010) (Ex. E).

### B. Plaintiffs' Counsel Gleizer Withdraws From Representation Because Of Plaintiffs' "Wrongful" Conduct

Once it came to light that "Mr. Forgione's" claims were fabricated, Gleizer sought to withdraw as counsel for Plaintiffs and "Mr. Forgione." Order to Show Cause at 2 (May 12, 2011), ECF No. 38 (setting hearing as to "why an order should not made and entered: relieving present counsel [Gleizer] for PLAINTIFF ANTONIO FORGIONE, MICHELE COLELLA and DENISE DUSSAULT"). Gleizer grouped these three clients together because he believed Plaintiffs were involved in the fraud, since "Mr. Forgione's" false account statements were based on Plaintiffs' account. Hr'g Tr. at 9:5-25 (May 24, 2011), ECF No. 42.[3] Notably, Gleizer seems to have "ha[d] questions about the basis for the claims of those three people [Colella, Dussault,

---

[3] Gleizer also sought attorneys' fees, arguing Plaintiffs' "wrongful" and "perhaps fraudulent" conduct had eliminated any possibility of litigation proceeds from which Gleizer could collect under their contingency fee arrangement. Hr'g Tr. at 3:19-4:6 (Sept. 19, 2011), ECF No. 46.

and Forgione]" in *both* cases (*Colella* and *Forgione*), *id.* at 10:9-12, and asked for permission to "make an ex-parte application as to what . . . else [he] kn[e]w." *Id.* at 10:7-8.

Plaintiffs tried to distance themselves from the fraud, although they agreed that submission of altered bank account statements meant "someone was committing fraud," and accepted the bank declarant's conclusion that "Mr. Forgione's" account statement was an altered version of Plaintiffs' account statement. While Plaintiffs' counsel asserted that "someone got hold of [Plaintiffs'] statements and misused" them, *id.* at 12:17-13:5; *id.* at 13:17-19 ("if there were victims here . . . it would be Colella and Dussault"), Plaintiffs never introduced any actual evidence to substantiate this claim.

The Court granted Gleizer's request to withdraw, but found that it had no occasion to rule on Plaintiffs' wrongdoing because Plaintiffs had not received any funds, so Gleizer's application for contingency fees was premature. Hr'g Tr. at 8:15-18 (Sept. 19, 2011), ECF No. 46 ("adjudicate[ing] these claims of wrongdoing . . . is totally inappropriate at this point because there is nothing [for Gleizer] to recover [a fee] on"). Following this, no judgment was entered in *Forgione,* nor did "Mr. Forgione" ever seek a judgment.

### C. By Failing To Produce The Bonds, Plaintiffs Breach An Agreement With The Republic Under Which They Would Receive Over Seven Million Dollars

In 2016, Plaintiffs entered into a settlement agreement with the Republic listing bondholdings of $3.7 million of bond ISIN US040114AN02 and $850,000 of bond ISIN US040114AZ32. Master Settlement Agreement (Ex. R). Under the agreement's terms, Plaintiffs were to receive $7,610,658 upon delivery of the bonds. *See* Agreement Schedule ¶ iv (Ex. R). The Republic countersigned and sent the agreement back to Plaintiffs in July 2016. *See* Email from J. Sleater (Oct. 12, 2016) (Ex. Q at 9) (confirming "Mr. Colella and Mrs. Dussault, received the signed settlement agreement from Argentina on July 21, 2016").

The settlement agreement provides that the parties choose a date within 150 days of entering into the agreement for delivery of the bonds by the bondholder to the Republic, upon which the Republic would deliver the funds to the bondholder (via an intermediary such as Clearstream or Euroclear). *See* Agreement Schedule ¶ ii-iii; Master Settlement Agreement ¶ 7(i) (Ex. R). Initially, Plaintiffs acted as though they intended to comply with their contractual obligations and deliver the bonds. *See* Email from J. Sleater (Oct. 12, 2016) (Ex. Q at 9); Email from M. Colella (July 6, 2016) (Ex. Q at 10). But as 150 days approached, and it became clear that Plaintiffs would have to deliver the bonds to receive payment, Plaintiffs repeatedly asked for more time, though the Republic informed them that the settlement payment (over $7.6 million) was ready to be transferred. Emails from J. Sleater and O. Colazo (Nov. 2016) (Ex. Q at 2-5).

Plaintiffs never delivered their bonds, and have offered shifting "explanations." Plaintiffs initially claimed their bonds (with a face value of $4.55 million) got lost in the merger of two banks. *See* Email from J. Sleater (June 17, 2017) (Ex. Q at 1) (Plaintiffs' counsel's stating they "have been trying to track down our clients bonds that were previously held at Banca di Roma in Italy for many months."). At one point, Plaintiffs' counsel said the issue was setting up an account to transfer the bonds and receive payment. *See* Emails from J. Sleater (Nov. 11, 2016 and Nov. 30, 2016) (Ex. Q at 2). Plaintiffs now claim they informed the Republic in April 2017 that they were "reced[ing]" from the non-countersigned settlement agreement because they had expected to receive the full value of their judgment. *See* Email from M. Colella (Apr. 18, 2019) (Ex. P at 2-3, 5) (enclosing as "evidence" a copy of the settlement agreement signature page signed by Plaintiffs alone (Ex. P at 6)); Letter from M. Spencer to Court at 2 (Aug. 15, 2019), ECF No. 81 (bonds not delivered because "the settlement paperwork did not reflect [Plaintiffs'] understanding of the settlement amount and was not signed by Argentina's representative.").

This is another intentional misrepresentation.  Plaintiffs' contention that they withdrew from the settlement in April 2017 (in a letter the Republic has no record of receiving) before the Republic countersigned is belied by Plaintiffs' counsel's July 2016 email confirming that Plaintiffs had received the signed agreement from the Republic, *see* Email from J. Sleater (Oct. 12, 2016) (Ex. Q at 9).  Plaintiffs' claim that they did not understand that they would receive $7.6 million under the settlement agreement (more than the face value of their judgment) and thought they would receive the full value of their judgment with interest is contradicted by the fact that Plaintiffs' counsel explained the calculation of the $7.6 million settlement amount to Plaintiffs in June 2016, and Plaintiffs expressly accepted this amount.  *See* Emails from J. Sleater, M. Colella, and O. Colazo (June 2, 2016) (Ex. Q at 11-15).  And if Plaintiffs in fact wrote to the Republic to withdraw from the settlement in April 2017, there is no explanation for why their counsel informed the Republic in June 2017 that Plaintiffs were still trying to locate and deliver the bonds.  *See* Email from J. Sleater (June 17, 2017) (Ex. Q at 1).

### D.    The Republic Tries To Determine The Status Of Claims

In May 2019, the Republic requested that the Court require plaintiffs to prove ownership of the bonds or else dismiss their claims.  Letter from C. Boccuzzi to Court (May 10, 2019), ECF Nos. 75-76.  Michele Colella sent the Court purported bond ownership documents, and the Court directed Plaintiffs to send the documents to the Republic, instructing the parties to confer.  Order (May 15, 2019), ECF No. 77; Email from M. Spencer (May 15, 2019) (Ex. C).

Upon receiving the purported ownership documents from Plaintiffs, given the history and based on inconsistencies on the face of the documents, the Republic sought to independently verify the documents' authenticity.  The Republic contacted the banks named in the purported account statements, and obtained a declaration from Raffaele Fiorentino, the head of the Legal Department at Banca di Credito Cooperativo Terra di Lavoro ("BCC"), stating that the account

statement purporting to show $3.7 million of bond ISIN US040114AN02 and $850,000 of bond ISIN US040114AZ32 was inauthentic and Plaintiffs do not currently hold any securities at the bank. *See* Fiorentino Decl. (July 18, 2019) (Ex. A).[4] While the Republic was verifying with the banks, Plaintiffs sent the Republic a purportedly apostilled copy of a more recent account statement supposedly to assuage concerns regarding the documents' authenticity. *See* Email from M. Spencer (June 28, 2019) (Ex. B). Like the initial account statement, the apostilled version also had several discrepancies on its face, strongly suggesting it was doctored, even without the need for a forensic analysis. *See* Account Statement Discrepancies (Ex. D).

After counsel for the Republic brought to the attention of Plaintiffs' counsel that the purported BCC account statement was inauthentic, Plaintiffs responded that they would not agree to voluntary dismissal of their claims and that they intended to take police action against the BCC bank declarant. In light of this, the Republic requested a conference in connection with a proposed motion to dismiss Plaintiffs' claims and vacate Plaintiffs' judgments, and the Court granted the Republic leave to file the instant motion. *See* Order Granting Letter Mot. for Conference (Aug. 14, 2019), ECF No. 80; Memo Endorsement (Sept. 6, 2016), ECF No. 87.

## ARGUMENT

### I. ALL OF PLAINTIFFS' CLAIMS SHOULD BE DISMISSED AND BOTH OF PLAINTIFFS' JUDGMENTS VACATED FOR FRAUD ON THE COURT

#### A. Plaintiffs Have Committed Fraud On The Court

"Our judicial system generally relies on litigants to tell the truth." *Lawrence v. City of New York*, No. 15 Civ. 8947, 2018 WL 3611963, at *6 (S.D.N.Y. July 27, 2018) (citation and

---

[4] Plaintiffs also submitted an account statement purporting to show $1.3 million of bond ISIN US040114AN02, *see* Email from M. Spencer (May 15, 2019) (Ex. C at 9), which the named bank has confirmed is consistent with its records.

internal quotations omitted).  Accordingly, "a federal district court possesses the inherent power to deny the court's processes to one who defiles the judicial system by committing a fraud on the court." *Aoude*, 892 F.2d at 1118 (affirming dismissal of two separate actions for fraud on the Court where plaintiff attached doctored purchase agreement to one of the complaints); *id.* at 1119 (it is "surpassingly difficult to conceive of a more appropriate use of a court's inherent power than to protect the sanctity of the judicial process—to combat those who would dare to practice unmitigated fraud upon the court itself").  Fraud on the Court occurs where "a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by . . . unfairly hampering the presentation of the opposing party's claim or defense." *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002) (dismissing with prejudice for fraud on the Court where plaintiff repeatedly concealed material evidence to support claim that she was fired for having breast cancer).  This includes where a litigant tries to "improperly influence[] the trier of fact, lies to the court and h[er] adversary intentionally, repeatedly, and about issues that are central to the truth finding process, or knowingly submit[s] fraudulent documents to the Court." *Lawrence*, 2018 WL 3611963, at *2 (citation and internal quotations omitted).

Courts in this circuit have consistently held that repeated submission of fabricated evidence constitutes sanctionable fraud on the Court, especially where the documents in question are central to the case.  *See N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.*, 432 F. App'x 25, 25 (2d Cir. 2011) (affirming sanctions for fraud on the Court because "[f]alsifying evidence is sanctionable conduct"); *Jung v. Neschis*, No. 01 Civ. 6993, 2009 WL 762835, at *15 (S.D.N.Y. Mar. 23, 2009) (plaintiff committed fraud on the Court by fabricating CT scan report to demonstrate mental incapacitation); *Shangold v. Walt Disney Co.*, No. 03 Civ. 9522, 2006 WL

71672, at *3 (S.D.N.Y. Jan. 12, 2006) (dismissing with prejudice for fraud on the Court where plaintiffs fabricated timeline and plot outline to bolster claim for misappropriation of storyline) *aff'd* 275 F. App'x 72 (2d Cir. 2008); *Scholastic, Inc. v. Stouffer*, 221 F. Supp. 2d 425, 439 (S.D.N.Y. 2002) (awarding attorneys' fees and permanently enjoining future misrepresentations about intellectual property rights as a sanction for fraud on the court involving knowing submission of false documents for copyright claim against *Harry Potter* series), *aff'd*, 81 F. App'x 396 (2d Cir. 2003); *Hargrove v. Riley*, Civil Action No. CV-04-4587, 2007 WL 389003, at *11 (E.D.N.Y. Jan. 31, 2007) (prisoner falsified reports and forged notarizations on other documents purportedly informing prison of his preexisting condition).

Here, Plaintiffs' conduct falls squarely within the definition of fraud on the Court. Plaintiffs "intentionally [and] repeatedly" fabricated evidence, *e.g., Lawrence*, 2018 WL 3611963, at *3, by (1) doctoring their *Rigueiro* Account Statement to seek a judgment in *Forgione* in July 2007, *see* Exs. E, L; (2) submitting a second, falsified account statement in *Forgione* in November 2007 when the Republic raised concerns regarding authenticity, *see* Exs. F-G; (3) sending the Court and the Republic another inauthentic account statement in May 2019 to show purported current ownership of the bonds in the *Colella* action, *see* Ex. C; and (4) trying to mislead the Republic with an apostilled account statement in June 2019, after the Republic once again raised authenticity concerns, *see* Ex. B.[5]  Plaintiffs' fraud "goes to the heart of the case," *i.e.*, ownership of the bonds, and "unfairly hamper[ed] the presentation of the . . . [Republic's] defense" that Plaintiffs' claims should be dismissed and their judgments vacated

---

[5] Plaintiffs also made express representations to the Republic that they owned the bonds listed in the fabricated account statement when they entered into a settlement agreement with the Republic in 2016 (and subsequently breached that agreement by failing to deliver the bonds). *See* Master Settlement Agreement ¶¶ 4, 5 (Ex. R).

because Plaintiffs do not hold the bonds. *Cerruti 1881 S.A. v. Cerruti, Inc.*, 169 F.R.D. 573, 583 (S.D.N.Y. 1996); *McMunn*, 191 F.Supp.2d at 445 (citation omitted). Plaintiffs themselves have acknowledged that fabrication of account statements constitutes fraud in the context of this litigation. Hr'g Tr. at 12:17-13:5 (May 24, 2011), ECF No. 42 (submission of altered bank documents meant "someone was committing fraud").

While Plaintiffs have not admitted to committing fraud in *Forgione*, it seems clear they were responsible given (1) their former counsel's statements, Hr'g Tr. at 4:25-5:3 (Sept. 19, 2011), ECF No. 46, (2) the altered *Forgione* account statements were based on Plaintiffs' account statements, *see* Formica Decl. (Nov. 12, 2010) (Ex. E); and (3) Plaintiffs have now engaged in the same conduct, (*i.e.*, doctoring account statements) in their own case, *see* Fiorentino Decl. (July 18, 2019) (Ex. A). This also calls into question the authenticity of other bond ownership documents Plaintiffs have submitted in the past. *See* Exs. L, O.

Moreover, Plaintiffs' "attempts to explain" their fraudulent conduct "continue a pattern of evasion and untruths." *Lawrence*, 2018 WL 3611963, at *6. In *Lawrence*, a plaintiff submitted staged photographs and falsely testified to support a personal injury suit. *Id.* When the fraud was exposed, she claimed that it was caused by her eye disease (conjunctivitis), and once that explanation was rejected by the Court, that it was caused by mental illness. *Id.* The Court held that the plaintiff's "shifting explanations [we]re as troubling as the photographs themselves." *Id.* at *7 ("Memory lapse does not explain manufactured exhibits and perjured testimony"), and dismissed the case for fraud on the Court.[6]

---

[6] There was an appeal in Lawrence that was dismissed as "lack[ing] an arguable basis either in law or in fact," Order at 1, *Lawrence v. City of New York*, No. 18 Civ. 2542 (2d Cir. Jan. 16, 2019), ECF No. 30. Reconsideration and reconsideration *en banc* were denied, Order at 1, *Lawrence v. City of New York*, No. 18 Civ. 2542 (2d Cir. Mar. 7, 2019), ECF No. 35.

Similarly here, Plaintiffs' "explanations" for their malfeasance are unconvincing and amount to a continuation of their fraud. As to the false account statements, Plaintiffs' counsel argued in 2007 that Plaintiffs were the victims of reverse identity theft, implying "Mr. Forgione" obtained and doctored Plaintiffs' bank account statements without Plaintiffs' involvement. Hr'g Tr. at 12:17-13:5-19 (May 24, 2011), ECF No. 42 ("if there were victims here . . . it would be Colella and Dussault"). Now, Plaintiffs have threatened to take police action against the head of the BCC's legal department, insinuating that the account statement is genuine, and the BCC bank declarant lied under penalty of perjury without any apparent or alleged motive. Letter from M. Spencer to Court at 2 (Aug. 15, 2019), ECF No. 81. Plaintiffs simultaneously contend that the $4.55 million of bonds were transferred to BCC in June 2018, and thereafter misplaced. *Id.* Of course, this does not explain how Plaintiffs could have account statements from December 2018 and May 2019 purporting to show the bonds in their account. *See* Exs. B-C.

Plaintiffs have also given shifting explanations for failing to deliver the bonds for settlement. Initially, Plaintiffs claimed they were having trouble locating the bonds, but assured the Republic they would deliver the bonds for settlement by the agreed-upon date. *See* Ex. Q at 2-4. At one point, Plaintiffs' counsel said the issue was setting up an account for transferring the bonds and receiving payment. *See id.* Now, Plaintiffs say they misunderstood the settlement terms but withdrew before the Republic countersigned. *See* Ex. P. This is contradicted by Plaintiffs' counsel's emails stating that Plaintiffs had received the signed settlement agreement months before they purportedly withdrew, Ex. Q at 9, and stating months after Plaintiffs purportedly withdrew that they were still trying to locate the bonds in order to deliver them for settlement, *id.* at 1.

### B. Dismissal With Prejudice Is An Appropriate Remedy

Though it is a harsh sanction, dismissal with prejudice is an "entirely appropriate" remedy for fraud on the Court. *See, e.g., Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 435 (S.D.N.Y. 2016) ("Dismissal is virtually required" where "the misconduct at issue is the knowing fabrication of the critical allegations underlying the complaint that plaintiff must prove in order to recover."). Courts weigh various factors in choosing a sanction for fraud on the Court. *E.g., Lawrence*, 2018 WL 3611963, at *6. All favor relief here.

#### (1) Plaintiffs' Misconduct Was Performed Intentionally And In Bad Faith

Courts have broad power to vacate judgments and/or dismiss claims with prejudice where, as here, a litigant acts in bad faith. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991); *Shangold*, 2006 WL 71672, at *4. Bad faith can be inferred when "actions taken are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Abbott Labs, et al., v. Adelphia Supply USA, et al.*, No. 15 Civ. 5826, 2019 WL 3281324, at *15 (E.D.N.Y. May 2, 2019) (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 338 (2d Cir. 1999)); *Lawrence*, 2018 WL 3611963, at *8 (litigants should know the difference between "providing honest exhibits as opposed to . . . manufacturing exhibits . . . [b]ecause that's the difference between right and wrong.").

To date, Plaintiffs have adduced no evidence refuting the bank declarant's sworn statement that their purported account statement is inauthentic. *See* Fiorentino Decl. (July 18, 2019) (Ex. A). Even on Plaintiffs' own theory that BCC lost their bonds, there is no explanation other than intentional forgery for why Plaintiffs would have account statements from December 2018 and May 2019, Exs. B-C, listing the bonds as in their account. *See Lawrence*, 2018 WL 3611963, at *7 (finding bad faith because "it is clear that [plaintiff] or someone on her behalf intentionally staged [the photographs]" and "[w]hether [plaintiff] personally created the

-13-

photographs or not, she embraced them").  The inconsistencies *on the face of the documents* submitted by Plaintiffs further demonstrate that they were intentionally doctored rather than created through a bank's automated process.  *See* Ex. D; *DAG Jewish Directories, Inc. v. Y & R Media, LLC*, No. 09 Civ. 7802, 2010 WL 3219292, at *5 (S.D.N.Y. Aug. 12, 2010) (dismissing for fraud on the Court based on a forgery that "could not have been accidental" and by its "nature could only result from intentional bad faith").

### (2)    *Plaintiffs' Pattern Of Misbehavior Prejudiced The Republic*

Over several years, Plaintiffs have intentionally and repeatedly submitted false documents, made false representations, and given unconvincing explanations for these anomalies, hampering the Republic's ability to resolve the litigation against it.  *See supra.*  As early as 2004, there have been concerns about the authenticity of documents submitted by Plaintiffs, *see* Pls.' Decl. ¶ 10 (Aug. 11, 2004) (Ex. O) (Plaintiffs claiming they were not guilty of "forging documents and then having them certified and apostilled to make them look real"), and recent events make clear that these concerns were warranted.

Plaintiffs' pattern of misbehavior involves all three of the above-captioned cases.  The false account statements Plaintiffs submitted this year list the bondholdings in *Colella*.  As to *Rigueiro* and *Forgione*, Plaintiffs' scheme was to bring the same AN02 Claim twice, under different names.  To do this, "Mr. Forgione" doctored an account statement listing the same bond interests Plaintiffs had already claimed in *Rigueiro* to bring a duplicative claim on the same bond series and for the same principal amount in *Forgione*.  Even if otherwise, a party's fraud on the Court in one case can justify dismissal of a separate action in which fraudulent documents were not filed.  *See Aoude*, 892 F.2d at 1121-22 ("[T]wo complaints [that] paralleled each other" in two separate cases were "appropriately jettisoned" for fraud on the Court where plaintiff attached a false document to one complaint and the real document to the other).

### *(3)* ***Far From Being Corrected, Plaintiffs' Misconduct Continues***

Where a litigant acts in bad faith, courts are empowered to impose "the most severe in the spectrum of sanctions" to deter continuing or future misconduct. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976); *Lawrence*, 2018 WL 3611963 at *7 (dismissing for fraud on the Court because the plaintiff's "lies and misconduct will almost certainly continue in the future") (citation omitted). This Court routinely dismisses cases with prejudice in order to deter fraud on the Court. *See DAG Jewish Directories, Inc. v. Y & R Media, LLC*, No. 09 Civ. 7802, 2010 WL 3219292, at *4 (S.D.N.Y. Aug. 12, 2010) ("Nothing less than outright dismissal would deter similar misconduct or sufficiently punish plaintiffs."); *Shangold*, 2006 WL 71672, at *3 ("Because Shangold and Niederman have tainted evidence at the heart of their dispute with Defendants and then sought to conceal it, they have forfeited their right to litigate this case and no sanction short of dismissal will suffice to deter future misconduct"). Here, Plaintiffs did not correct their fraud before it was discovered, nor have they done so to date. To the contrary, Plaintiffs have refused to admit to any misconduct. Letter from M. Spencer to Court at 2 (Aug. 15, 2019), ECF No. 81 ("If this issue were properly raised, Mr. Colella would oppose Argentina's accusations."). They have since even sought to enforce their judgments in other jurisdictions—Argentina, Italy, and the Eastern District of New York, so far. Registration of Foreign Judgment, *Colella et al v. Republic of Argentina*, No. 19 Misc. 2013 (E.D.N.Y. Aug. 7, 2019), ECF No. 1.[7]

Particularly in light of Plaintiffs' continuing fraud, dismissal of *all* of Plaintiffs' claims is warranted for purposes of deterrence. *See DAG Jewish Directories, Inc.*, 2010 WL 3219292, at

---

[7] Initiation of these proceedings violates Plaintiffs' undertaking in the 2016 settlement agreement not to "commence any legal proceeding[s]" in the future with respect to "any defaulted Argentine bonds." Master Settlement Agreement ¶ 7(ii) (Ex. R).

*5 (dismissing with prejudice because "in light of the past pattern of misconduct and lack of admission or remorse, further misconduct seems likely"); *Aoude*, 892 F.2d at 1118 (A litigant who "defiles the judicial system by committing a fraud on the court" should be "den[ied] the court's processes."). Even assuming *arguendo* that Plaintiffs' fraud only involved a subset of their claims (which is not the case), allowing Plaintiffs to maintain their remaining claims would create a perverse incentive. Plaintiffs could try to assert fraudulent, duplicative claims based on the same bond interests under false names any number of times, with the only consequence being that the newly asserted claim may not survive if Plaintiffs were caught. *See Lawrence*, 2018 WL 3611963, at *7 (dismissing with prejudice because "merely excluding the fabricated evidence would not only fail to address . . . [P]laintiff's other misconduct . . . but would also send the [P]laintiff, and future litigants like [her], the message that they have everything to gain, and nothing to lose, by continuing to submit fabricated evidence.") (citation omitted).

This concern is exacerbated by the nature of the secondary bond market, which makes it "practically impossible to trace purchases and sales of a particular beneficial [bond] interest." *Brecher v. Republic of Argentina*, 806 F.3d 22, 26 (2d Cir. 2015). Because bond interests can be transferred in an anonymous, decentralized manner, opportunistic holders could bring claims on the same bond interests under false names. Recognizing this potential for double recovery, the Court has routinely ordered holders of judgments on Republic-issued bonds to "refrain from selling or otherwise transferring . . . the bonds . . . without advising the Court in advance and obtaining permission of the Court," *e.g.*, J. ¶ 3 (June 1, 2006) (Ex. M). *See Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 386 (2d Cir. 1981) ("[C]ourts are free to consider the general deterrent effect their orders may have on the instant case and on other litigation, provided

that the party on whom they are imposed is, in some sense, at fault"). Deterrence is important in this context, and provides strong support for dismissal of all of Plaintiffs' claims.

## II. PLAINTIFFS' *COLELLA* AND *RIGUEIRO* JUDGMENTS ARE ADDITIONALLY SUBJECT TO VACATUR PURSUANT TO RULE 60(b)(6)

Federal Rule of Civil Procedure 60(b)(6) allows a court to relieve a party from a final judgment for "any other reason that justifies relief" (other than the reasons in provisions 60(b)(1)-(5)). Fed. R. Civ. P. 60(b)(6). Courts vacate judgments under this provision where there are "extraordinary circumstances" or "the failure to grant relief would work an extreme hardship on the movant." *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 109 (2d Cir. 2012) (citation omitted). Relief can be granted where a litigant discovers misconduct after entry of a judgment. *See United States v. Cirami*, 563 F.2d 26, 34 (2d Cir. 1977) (vacating judgment under Rule 60(b)(6) where attorney's misconduct came to light after entry of judgment).

It is now clear that the circumstances here are extraordinary. In two decades of litigation on Republic-issued bonds involving hundreds of claimants, there have been two confirmed instances of intentional misrepresentation of bond ownership—and Plaintiffs are connected to both (*i.e.*, "Mr. Forgione's" submission of doctored account statements in 2007 and Plaintiffs Colella and Dussault's submission of doctored account statements this year). As described *supra*, Plaintiffs have intentionally taken advantage of the unique context, *see Brecher*, 806 F.3d at 26, through a scheme to assert duplicative claims, and accordingly it was unjust for them to obtain any judgments. *See Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980) ("When a party timely presents a previously undisclosed fact so central to the litigation that it shows the initial judgment to have been manifestly unjust, reconsideration under rule 60(b)(6) is proper"). If Plaintiffs are able to keep their judgments, litigants will be incentivized to file duplicative claims based on falsified documents with no consequence (or

only the consequence that if they are caught, their newly filed claim will be dismissed, leaving them no worse off). *See supra.* Besides vacating the judgments, there is no other remedy for Plaintiffs' misconduct. *Quevedo v. Postmaster, U.S. Postal Serv.*, 774 F. Supp. 837, 839 (S.D.N.Y. 1991) (vacating under Rule 60(b)(6) because allowing the court's prior decision to stand would "deny[] [litigant] access to the only legal remedy proper in this situation.").

Plaintiffs' failure to deliver the bonds for settlement also justifies relief under Rule 60(b)(6). *See, e.g.*, *Polit v. Glob. Foods Int'l Corp.*, No. 14 Civ. 7360, 2016 WL 632251, at *1-2 (S.D.N.Y. Feb. 17, 2016) (finding "extreme hardship" and granting relief from judgment where litigant failed to pay fees required under arbitration agreement). It would be inequitable if bondholders could breach settlement agreements with the Republic without consequence, and would jeopardize the Republic's efforts to resolve its debt through the Propuesta, which were supervised by Special Master Daniel Pollack, welcomed by this Court, and blessed by the Second Circuit. *See Aurelius Capital Master, Ltd. v. Republic of Argentina*, 644 F. App'x 98, 107, 109 (2d Cir. 2016) (affirming that "Argentina has shown a good-faith willingness to negotiate" through the *Propuesta*) (internal quotations omitted).

The *Colella* judgment should also be vacated because Plaintiffs clearly no longer hold the bonds. This Court has consistently dismissed cases and ordered satisfaction of judgments where plaintiffs do not hold the bonds. *See, e.g.*, Order of Satisfaction of J. & Dismissal, *Ritoper v. Republic of Argentina*, No. 07 Civ. 6426 (LAP) (S.D.N.Y. July 24, 2018), ECF No. 17. The bank where Plaintiffs claim the bonds are held has made clear that Plaintiffs do not currently hold any Republic-issued bonds. Moreover, if Plaintiffs held the bonds, they would have submitted a genuine account statement rather than an inauthentic one. *See Lawrence*, 2018 WL 3611963, at *7 (dismissing where it was "apparent that [litigants] can rely only on fraudulent or

defective records" to prove their claims) (citation omitted). And the fact that Plaintiffs failed to deliver the bonds to the Republic for settlement in order to receive over seven million dollars further supports that Plaintiffs do not hold the bonds.

### III. "MR. FORGIONE'S" CLAIM IS ADDITIONALLY SUBJECT TO DISMISSAL PURSUANT TO RULE 41(b)

Unsurprisingly, once "Mr. Forgione" was exposed as a fraud in 2011, he was never heard from again, so his claims are also subject to dismissal for failure to prosecute. *See* Fed. R. Civ. P. 41(b). Courts have well-settled authority to dismiss for failure to prosecute where, as here, a plaintiff allows an action "to lie 'dormant with no significant activity to move it'" forward. *E.g., McAllister v. Garrett*, No. 10 Civ. 03828 (LAP) (HBP), 2015 WL 1623826, at *2 (S.D.N.Y. Mar. 11, 2015); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629 (1962) ("The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted."). For failure to prosecute, courts consider the significance of the delay, the balance between alleviating docket congestion and the plaintiff's opportunity to be heard, prejudice to the defendant, notice to the plaintiff, and the efficacy of lower sanctions. *E.g.*, *McAllister*, 2015 WL 1623826, at *2. Not all factors need to support dismissal. *Charell v. Nichols*, No. 97 Civ. 5552 (LAP), 1999 WL 253642, at *3 (S.D.N.Y. Apr. 29, 1999). While "no one factor is dispositive . . . the length of the plaintiff's delay," is of particular importance. *Id*.

Here, each factor weighs in favor of dismissal. *First*, the duration of inactivity far exceeds the periods for which Courts routinely dismiss: A six-month delay can warrant dismissal, and "[f]ailure to communicate with opposing counsel or the Court for over a year certainly constitutes an unreasonable delay." *McAllister*, 2015 WL 1623826, at *3. Moreover, the delay is significant because it is attributable entirely to "Mr. Forgione's" failure to take any action to move this litigation forward in more than eight years, *i.e.*, since Gleizer withdrew from

representation in 2011. *See Ctr. for Monitoring Impact of Peace, Inc. v. Ctr. for Monitoring the Impact of Peace, R.A.*, No. 06 Civ. 2390 (LAP), 2010 WL 3958823, at *2 (S.D.N.Y. Sept. 24, 2010) (finding plaintiff responsible for delay where the cases had "remained in substantially the same procedural stage" since being filed over four years ago). *Second*, the balance weighs in favor of decongesting the docket rather than "Mr. Forgione's" opportunity to be heard given that the delay is attributable to "Mr. Forgione's" inaction. *Third*, as events "recede further into the past and evidence becomes more stale" defendants are prejudiced since their "ability to defend" diminishes. *U.S. ex rel. Pervez v. Maimonides Med. Ctr.*, No. 06 Civ. 4989 (LAP), 2010 WL 890236, at *3 (S.D.N.Y. Mar. 9, 2010), *aff'd*, 415 F. App'x 316 (2d Cir. 2011). *Fourth*, "Mr. Forgione" has ample notice that his claim could be subject to dismissal, since the Court entered orders to show cause against dismissal in the *Forgione* action in November 2018, December 2018, and again in July 2019, with no response from "Mr. Forgione." Order at 6 (Nov. 6, 2018), ECF No. 48; Memo Endorsement at 2 (Dec. 17, 2018), *Forgione*, ECF No. 51; Order (July 18, 2019), ECF No. 54. *Finally*, there are no applicable lower sanctions to consider.

## CONCLUSION

For the foregoing reasons, the claims of plaintiffs Michele Colella and Denise Dussault should be dismissed with prejudice and their judgments vacated.

Dated:  New York, New York
        September 6, 2019

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____

Carmine D. Boccuzzi, Jr. (cboccuzzi@cgsh.com)
Rahul Mukhi (rmukhi@cgsh.com)
One Liberty Plaza, New York, New York 10006
(212) 225-2000

*Of Counsel:*
Rathna J. Ramamurthi                    *Attorneys for the Republic of Argentina*