UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                                                 )
MICHELE COLELLA and DENISE DUSSAULT,             )
                                                 )
                    *Plaintiffs,*                )
                                                 )
          v.                                     )          04 Civ. 2710 (LAP)
                                                 )
THE REPUBLIC OF ARGENTINA,                       )
                                                 )
                    *Defendant.*                 )
_____)
                                                 )
MARCELO RUBEN RIGUEIRO, *et al.,*                )
                                                 )
                    *Plaintiffs,*                )
                                                 )
          v.                                     )          05 Civ. 3089 (LAP)
                                                 )
THE REPUBLIC OF ARGENTINA,                       )
                                                 )
                    *Defendant.*                 )
_____)

**MEMORANDUM OF MICHELE COLELLA AND DENISE DUSSAULT
IN OPPOSITION TO REPUBLIC OF ARGENTINA'S
MOTION TO DISMISS THEIR CLAIMS AND VACATE THEIR JUDGMENTS**

Michael C. Spencer
MILBERG PHILLIPS & GROSSMAN LLP
One Pennsylvania Plaza, Suite 1920
New York, NY 10119
(212) 594-5300

October 4, 2019

## TABLE OF CONTENTS

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

Factual Background

      A.     Money judgments were entered for Colella in 04 Civ. 2710
           and 05 Civ. 3089 in 2006 and 2007 . . . . . . . . . . . . . . . . . . . . . . . .   5

      B.     In 2011, Judge Griesa rejected Argentina's claim that
           Colella was involved in any fraud committed by plaintiff
           Forgione in 06 Civ. 17151 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

      C.     Colella decides not to accept any Propuresta settlement offers
           on his bonds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

      D.     In response to docket-clean-up efforts earlier this year,
           the Colellas provided their account statements showing
           their holdings in 04 Civ. 2710 and 05 Civ. 3089 to
           counsel for Argentina . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

      E.     Argentina moves for vacatur of Colella's judgments
           on grounds of fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

Argument

I.     ARGENTINA'S MOTION TO VACATE COLELLA'S JUDGMENTS
      IS PRECLUDED AS UNTIMELY UNDER FRCP RULE 60(c)(1),
      AND THAT PRECLUSION CANNOT BE AVOIDED BY RESORT
      TO RULE 60(d)(3) OR 60(d)(6)

      A.     Argentina's motion seeking vacatur of judgments on grounds
           of fraud falls within Rule 60(b)(3), but it was made long after
           expiration of the one-year deadline set forth in Rule 60(c)(1) . . . .   9

      B.     Argentina cannot escape the one-year deadline by seeking refuge
           in Rule 60(d)(3) ("fraud upon the court"), because that subsection
           covers only corruption of the judicial process itself or fraud
           affecting litigants beyond the parties before the court . . . . . . . . .   9

      C.     Argentina's allegations against Colella do not fit within any
           plausible interpretation of Rule 60(d)(3) . . . . . . . . . . . . . . . . . . . .   12

      D.     Nor can Argentina seek vacatur under Rule 60(b)(6) . . . . . . . . . .   13

**II.**   **EVEN IF A MERITS INQUIRY WERE PERMISSIBLE
ON THIS MOTION, ARGENTINA'S PROPOSED EVIDENCE
WOULD NOT JUSTIFY VACATUR**

    **A.**   **If Argentina is arguing that Colella's judgment in 04 Civ. 2710
was fraudulently obtained, that argument is unfounded
and judicially estopped** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **14**

    **B.**   **Argentina cannot argue that Colella's judgment in 05 Civ. 3089
was fraudulently obtained, because it acknowledges that
the bonds are still on deposit in Colella's account at Banca Carige** .   **14**

    **C.**   **The Gleizer withdrawal proceedings in 2001 do not support
vacatur of the Colella judgments** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **15**

    **D.**   **The Fiorentino declaration is inadmissible hearsay and is
subject to doubt** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **16**

    **E.**   **The typographical errors pointed out by Argentina in Colella's
May 22, 2019 account statement are not clear and convincing
evidence of fraud** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **18**

    **F.**   **Colella's failure to consummate a Propuesta settlement in
04 Civ 2170 does not support a finding of fraud** . . . . . . . . . . . . . . . . .   **20**

**Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **20**

# TABLE OF AUTHORITIES

Cases

*Aurelius Capital Master, Ltd. v. Republic of Argentina,*
    644 F. *App'x* 98, No. 16-628, 2016 WL 1540614,
    2016 U.S. App. LEXIS 6820 (2d Cir. Apr. 15, 2016) . . . . . . . . . . . . . . . . . .        6

*Lee v. Marvel Enterprises, Inc.,* 471 Fed. Appx. 14 (2d Cir. 2012) . . . . . . . . . . . .       10

*General Medicine, PC v. Horizon/CMS Health Care Corp.,*
    2012 U.S. App. LEXIS 7186 (6th Cir. April 10, 2012) . . . . . . . . . . . . . . . .       11


Statutes, Rules, and Treatises

Fed. R. Civ. P. Rule 60  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    passim

It. Legislative Decrees 196/2003, amended, 101/2018 (Privacy Code) . . . . . . . . . . .       18

Regulation (EU) No. 2016/679  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .       18

Wright & Miller, Federal Practice and Procedure § 2864 . . . . . . . . . . . . . . . . . . . . .       13

Wright & Miller, Federal Practice & Procedure § 2870  . . . . . . . . . . . . . . . . . . . . . .    11, 14

**MEMORANDUM OF MICHELE COLELLA AND DENISE DUSSAULT
IN OPPOSITION TO REPUBLIC OF ARGENTINA'S
MOTION TO DISMISS THEIR CLAIMS AND VACATE THEIR JUDGMENTS**

Michele Colella and Denise Dussault (together, "Colella" or the "Colellas"), bondholder plaintiffs in the above-captioned actions, respectfully submit this memorandum in opposition to the motion by defendant Republic of Argentina ("Argentina") to dismiss their claims and vacate their judgments.

Colella's money judgments were entered in these actions in May 2006 and January 2007, and because more than one year has elapsed since then, Argentina is barred from making any motion to dismiss or vacate the judgments under Rules 60(b)(3) and 60(c)(1) of the Federal Rules of Civil Procedure, and the Court should deny the motion on that basis. Without waiving those positions, Colella submits that the motion also is legally and factually deficient on the merits.

**PRELIMINARY STATEMENT**

Rule 60(b)(3) of the Federal Rules of Civil Procedure provides that: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: … (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party[.]" Rule 60(c)(1) provides that any such motion must be made "no more than a year after the entry of the judgment or order or the date of the proceeding." Otherwise, the judgment debtor may seek vacatur only by bringing a new action. Proceeding otherwise violates the Federal Rules and the judgment holders' due process rights.

Argentina's present motion thus is dispositively precluded as untimely under the one-year limitation in Rule 60(c)(1). The judgments Argentina seeks to vacate were entered in *Colella* in

1

May 2006 (04 Civ. 2710 ECF No. 23) and in *Rigueiro* in January 2007 (05 Civ. 3089 ECF No. 24). It is astonishing that Argentina's motion does not mention these provisions, even though the Colellas raised them in their pre-motion letter.

Argentina asserted in its pre-motion reply letter, 04 Civ. 2170, ECF No. 83 p. 1, though not in its present motion papers, that the provision in Rule 60(d)(3) preserving motions to "set aside a judgment for fraud on the court" overcomes the above rules. The idea that Rule 60(d)(3) "fraud on the court" swallows Rule 60(b)(3) "fraud by an opposing party" is completely untenable under any reasonable view of the case-law precedents and treatise commentary on Rule 60(d)(3), which reserve that rule for truly exceptional dishonest conduct by officers of the court or for public frauds affecting parties beyond the immediate litigants, which Argentina does not claim here.

Probably realizing that the Rule 60(b)(3) is not a tenable fall-back, Argentina now argues that its motion to vacate arises under Rule 60(b)(6) (vacatur for "any other reason that justifies relief") or other inherent judicial power. But Argentina admits that Rule 60(b)(3) can apply only with respect to vacatur for reasons "other than the reasons in in provisions 60(b)(1)-(5)" (Arg. Br. at 17) – meaning that this catch-all subsection cannot be used to cover allegations of fraud by an opposing party, which is obviously what Argentina alleges here. There is no authority or justification for using this broad subsection to displace the rule's specific vacatur provisions.

Argentina's attempt to justify vacatur factually is also deficient (if, contrary to the above argument, the Court were to reach the facts). The facts here are strongly disputed by Colella, and this dispute cannot, consistent with due process and basic rules of procedure and evidence, be resolved on a paper record. Argentina wants to deprive Colella of money judgments duly entered against Argentina and now worth well over $14 million – and Argentina has not filed a

complaint, submitted to or allowed discovery, or made showings to a proper factfinder under the rules of evidence.

Of course, our due process point meshes exactly with Rules 60(b)(3) & (c)(1), which mandate that, after one year post-entry-of-judgment, a defendant may seek vacatur only by filing a new action. In such a new action, normal due process and procedural protections obviously would inhere.

Argentina has no competent admissible proof that the Colellas no longer own their bonds in 04 Civ. 2710. The paper trail supports the Colella holdings moving from Banca di Roma to UniCredit-Roma and then a transfer last year to BCC-Lavoro – the latter step shown by UniCredit transfer documents submitted with the Colella-Dussault Declaration on this motion ("C-D Decl.") and the year-end-2018 BCC-Lavoro statement previously furnished by Colella. Argentina's two arguments are that the May 22, 2019 statement Colella obtained by special request from BCC-Lavoro has typographical irregularities, and that a declaration recently supplied to Argentina's counsel by a BCC-Lavoro legal officer, Raffaele Fiorentino, says the bonds are *not* on record at the bank. Declaration of Rathna J. Ramamurthi ("RR Decl."), 04 Civ. 2710, ECF No. 90, Ex. A. Colella, on the other hand, declares the bonds were transferred from UniCredit to BCC-Lavoro in 2018 and should be on deposit there.  The interim account statement may have typographic issues because it was a one-off produced at a local branch, and Mr. Fiorentino may not have full information -- but most significantly, his declaration is inadmissible as evidence, and none of Argentina's assertions has been tested by cross-examination or rudimentary discovery processes. Mr. Boccuzzi's expressed certainty that "Plaintiffs clearly no longer hold the bonds" (Arg. Br. at 18) has no greater real substance to it

than the view of the signer of this brief that such a conclusion has not been proved according to basic legal standards.

With respect to 05 Civ. 3089, Argentina acknowledges, albeit on page 8 of its 8-page statement of facts, that the Colellas still own the subject bonds. There is no factual justification for a vacatur motion here.

The rest of Argentina's argument is a combination of chain conjecture and insinuation: Argentina posits that if the BCC-Lavoro account statement for the 04 Civ 2710 bonds is suspect, then Colella must have aided Forgione eight years earlier in forging the Forgione account statement in 06 Civ. 15171, and maybe the bonds covered by Colella's judgment in 05 Civ. 3079 are just duplicates of his bonds claimed in 04 Civ. 2710. Obviously Argentina has not provided anything approaching proof of any of those accusations. A prominent Wall Street law firm should not be describing those assertions as indubitable.

Ultimately, none of Argentina's accusations cast doubt on the integrity of the determinations by Judge Griesa in 2006 and 2007 that the Colellas owned the bonds, so money judgments were approved in 2006 in 04 Civ. 2710 and in 2007 in 05 Civ. 3089; and in any event, those determinations are long-standing *res judicata* as to Argentina. Argentina acknowledges it had a full opportunity to litigate the Colellas' motions for entry of judgment over a decade ago, and it hasn't raised any new facts from that era. It does not present any clear and convincing evidence of fraud in connection with entry of the judgments.

Instead, Argentina's focus is on its recent docket clean-up efforts. Milberg (which has been counsel to hundreds of individual bondholders in addition to Colella) understands and cooperates in those efforts; many of our client-plaintiffs' claims that have been paid through settlements or mooted if bonds were exchanged or sold into the market have been voluntarily

4

removed from the dockets and judgment rolls. In this case, however, Argentina wants to vacate the Colellas' judgment in 04 Civ. 2710 based on suspicions they no longer the underlying holds, without observing the Rule 60(b)(3) standards and clear-and-convincing evidence rules that clearly apply to judgment vacatur efforts; and to vacate the Colellas' judgment in 05 Civ. 3089 even while acknowledging that Colella still owns the bonds. Argentina has gone overboard in pursuing docket clean-up, and the Court should deny its motion.

## FACTUAL BACKGROUND

### A.   Money judgments were entered for Colella in 04 Civ. 2710 and 05 Civ. 3089 in 2006 and 2007

It is undisputed that Colella received money judgments in the two subject actions in 2006 and 2007. At the time, Argentina was contesting every judgment and casting aspersions on all bondholder plaintiffs' claims in an effort to forestall the inevitable. That applied to these two cases as well. Judge Griesa carefully evaluated Argentina's evasive assertions, including that plaintiffs were fabricating evidence of their holdings and claims, and rejected them. Opinion, June 15, 2006, 04 Civ. 2710, ECF No. 22; Opinion, August 23, 2006, 05 Civ. 3089, ECF No. 21.

### B.   In 2011, Judge Griesa rejected Argentina's claim that Colella was involved in any fraud committed by plaintiff Forgione in 06 Civ. 17151

After judgments were entered in 04 Civ. 2710 and 05 Civ. 3089 as described above, Mr. Gleizer moved in 2011 to withdraw as counsel for plaintiff Antonio Forgione in 06 Civ. 17151, another action Mr. Gleizer had initiated. Plaintiff Forgione had supplied a supposed Banca Carige account statement to support his claim of bond ownership on his summary judgment motion in that case in 2011, but the account statement appeared to be a cut-and-paste job falsified from a Banca Carige statement previously submitted on summary judgment by Colella in 05 Civ. 3089. In addition to arguing that Forgione could not recover, Argentina sought

discovery from the Colellas and other plaintiffs, evidently in order to challenge their judgments. Judge Griesa considered Argentina's position based on the documents submitted and quite extensive argument at the hearing on May 24, 2011. 04 Civ. 2710 ECF No. 44 (transcript). Judge Griesa allowed Mr. Gleizer to withdraw as counsel, but refused Argentina's request for further discovery from Colella, finding: "The information from the banker [at Banca Carige, confirming Forgione's falsification] did not read to me to accuse Colella and Dussault of anything.  So that's where I stand right now." *Id.* at p. 14. Forgione never retained other counsel to pursue his claims, and Argentina never suffered any injury as a result of his attempted fraud. There has never been any further evidence about the Forgione situation. But Argentina now wants to resurrect its accusations that Colella abetted the (apparent) Forgione fraud – the same innuendo Judge Griesa rejected eight years ago.

### C.      Colella decides not to accept any Propuesta settlement offers on his bonds

Despite their substantial bondholdings and money judgments in 04 Civ. 2710 and 05 Civ 3089 (total face value of $5.85 million, plus post-judgment interest running at about 5% for well over ten years), Colella – unlike almost all other bondholders – has declined to accept Argentina's Propuesta settlement offers, which would provide consideration of (only) 70% of judgment value as of February 2016 for holders who obtained pari passu injunctions (like Colella). Colella has followed the Second Circuit's observation that holders are free to settle on Propuesta terms *or* holders may continue to seek enforcement of their judgments, including through attachment or other normal post-judgment remedies. *Aurelius Capital Master, Ltd. v. Republic of Argentina,* 644 F. App'x 98, No. 16-628, 2016 WL 1540614, at *4, 2016 U.S. App. LEXIS 6820 (2d Cir. Apr. 15, 2016).

Colella decided to authorize his additional counsel, Jessica Sleater, to submit a Propuesta settlement for the bonds in 04 Civ. 2710 in June 2016. Argentina asserts that was a binding agreement; Colella submits that the terms remained undefined by Argentina and unaccepted by him for months thereafter, and that he receded from any settlement in April 2017. C-D Decl. ¶ 16; *see* RR Decl. at Exh. Q p. 9 (email, Oct. 12, 2016, Sleater to Sanchez Herrera of Cleary, noting non-receipt of website information needed to finalize settlement).

### D.   In response to docket-clean-up efforts earlier this year, the Colellas provided their account statements showing their holdings in 04 Civ. 2710 and 05 Civ. 3089 to counsel for Argentina

Argentina wants to clean up the dockets and judgments entered against it, after years of refusing to pay the judgments. There remain some cases and some bondholders with judgments, however, who do not want to settle their claims. In the view of plaintiffs' counsel, those judgment holders, like Colella, are entitled to wait to enforce their judgments at their own pace.

Nevertheless, Argentina has sought to require such hold-out judgment holders to demonstrate that they still hold the underlying bonds. On May 10, 2019, Argentina wrote to the Court (04 Civ. 2710 ECF No. 75) asking for entry of enclosed orders (ECF No. 76) (without even making motions for entry of the orders), which would require the Colellas to report whether they still held their bonds. Before an order was even entered, Colella provided documentation (account statements), and the Court directed counsel to share the materials and confer. ECF No. 77. Those materials included (a) Colella's year-end 2018 BCC-Lavoro account statement, RR Decl., ECF No. 90, Exh. C Part 1, pp. 6-8, covering the bonds in 04 Civ. 2710; and (b) Colella's quarterly Banca Carige statement dated March 31, 2019, *id.,* p. 9, covering the bonds in 05 Civ. 3089.

A month later, in an effort to confirm their bond ownership, Colella sent further documents with apostilles for delivery to Cleary, which occurred via counsel on June 28. RR Decl. Ex. B. Those documents included a May 22, 2019 interim account statement from BCC-Lavoro for the bonds in 04 Civ. 2710, as well as another copy of Colella's March 31, 2019, account statement from Banca Carige for the bonds in 05 Civ. 3089. *Id.*

E.    **Argentina moves for vacatur of Colella's judgments on grounds of fraud**

On July 30, 2019, Cleary wrote to Spencer advising that Cleary had obtained the Fiorentino declaration from BCC-Lavoro stating, with respect to the bonds in 04 Civ. 2710, that the May 22, 2019 account statement was inauthentic and the Colellas do not currently hold any securities at the bank. The Cleary lettter also went back over other purported issues from the Forgione episode, and demanded dismissal of the Colellas' claims and vacatur of their judgments in both 04 Civ. 2710 and 05 Civ. 3089. Spencer responded on August 8, pointing out that other Cleary lawyers had stated in a recent phone conversation that Cleary had confirmed with Banca Carige that Colella's bonds in 05 Civ. 3089 were indeed on deposit there. Spencer also asserted that there was no basis for asserting that Colella was involved in the Forgione falsification; and that Colella intended to file a police complaint against Fiorentino for making a false declaration. On August 12, Boccuzzi wrote to the Court (04 Civ. 2710, ECF No. 79) asking for a pre-motion conference for Argentina's proposed motion to vacate the judgments in both 04 Civ. 2710 and 05 Civ. 3089. Two days later the Court scheduled a pre-motion conference for August 27 (*id.* ECF No. 80). Spencer opposed the pre-motion letter on August 15, ECF No. 81, and Boccuzzi replied on August 16, ECF No. 83. Colella filed a police report in Italy claiming that Fiorentino had filed a false declaration on Aug 20. C-D Decl. ¶ 24. On August 27, at the brief pre-motion conference, the Court allowed Argentina to file its motion to vacate.

## ARGUMENT

I.   **ARGENTINA'S MOTION TO VACATE COLELLA'S JUDGMENTS IS PRECLUDED AS UNTIMELY UNDER FRCP RULE 60(c)(1), AND THAT PRECLUSION CANNOT BE AVOIDED BY RESORT TO RULE 60(d)(3) OR 60(d)(6)**

   A.   **Argentina's motion seeking vacatur of judgments on grounds of fraud falls within Rule 60(b)(3), but the motion was made long after expiration of the one-year deadline set forth in Rule 60(c)(1)**

As noted in the Preliminary Statement above, Argentina's present motion is untimely because it is made long after the deadline specified in Rule 60(c)(1) for its motion for relief from the final judgments entered against Argentina in these actions on the ground of "fraud, misrepresentation, or misconduct by an opposing party" has expired. Rule 60(b)(3). The deadline is one year after entry of judgment. Rule 60(c)(1).

These are black-and-white rules that do not really admit of any leeway. The rules were set forth in Colella's response to Argentina's pre-motion letter. Argentina's motion and supporting memorandum simply ignore the rules.

   B.   **Argentina cannot escape the one-year deadline by seeking refuge in Rule 60(d)(3) ("fraud upon the court"), because that subsection covers only corruption of the judicial process itself or fraud affecting litigants beyond the parties before the court**

Presumably Argentina will contend on reply that the above rules are superseded or swallowed by Rule 60(d)(3), which states that the above rules do not "limit a court's power to: … set aside a judgment for fraud on the court." But any fair reading of the unanimous case law and treatise discussion interpreting Rule 60(d)(3) makes clear that it is applicable only in instances of alleged fraud *by officers of the court*, or *affecting litigants beyond the parties before the court* – or in any event for truly extraordinary situations. Those conditions have not been met here.

Because Argentina's motion for vacatur and dismissal has not even addressed this issue, even though Colella had clearly put it on the table pre-motion, Colella's ability to respond is unfairly hampered, since Argentina evidently will make its argument only on reply. We do not even know comprehensively what Argentina is contending constitutes alleged fraud. But assuming Argentina relies on the facts already discussed in its pre-motion letters, Rule 60(d)(3) simply does not apply.

In *Lee v. Marvel Enterprises, Inc.,* 471 Fed. Appx. 14 (2d Cir. 2012) (summary order denying motion to vacate), the Second Circuit observed that the party seeking vacatur under Rule 60(d)(3) has a

> heavy burden of establishing a "fraud which does or attempts to defile the court itself, or is … perpetrated by officer of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1325 (2d Cir. 1995) (internal quotation marks omitted); *accord Gleason v. Jandrucko,* 860 F.2d 556, 559 (2d Cir. 1988) (explaining that "fraud on the court" "is limited to fraud which seriously affects the integrity of the normal process of adjudication").

In another decision, the Sixth Circuit has observed:

> Fraud on the court refers to "the most egregious conduct involving a corruption of the judicial process itself." 11 Charles Alan Wright et al. Federal Practice & Procedure § 2870 (West 2011) (collecting cases). Treatises speak of such flagrant abuses as bribing a judge, employing counsel to exert improper influence on the court, and jury tampering. Id. § 2870; Moore's Federal Practice § 60.21[4][a]. Although not doctrinally limited to such criminal acts, courts recognize the extraordinary nature of the remedy and cautioned against expansive use of the doctrine. In *Demjanjuk v. Petrovsky,* we observed that

>> [f]raud upon the court should … embrace only that species of fraud which does or attempts to subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct.

> 10 F.3d 338, 352-53 (6th Cir. 1993) (quoting Moore's Federal Practice § 60.33, omission in *Demjanjuk*) (setting aside an extradition order for fraud on the court

because government attorneys failed to disclose exculpatory evidence in violation of the duty recognized in *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)). Accordingly, cases require a party seeking to show fraud on the court to present clear and convincing evidence of the following elements: "1) [conduct] on the part of an officer of the court; that 2) is directed to the judicial machinery itself; 3) is intentionally false, willfully blind to the truth, or is in reckless disregard of the truth; 4) is a positive averment or a concealment when one is under a duty to disclose; and 5) deceives the court." *Johnson v. Bell,* 605 F.3d 333, 339 (6th Cir. 2010) (quoting *Carter v. Anderson* 585 F.3d 1007, 1011-12 (6th Cir. 2009)). "In practice, this means that even fairly despicable conduct will not qualify as a fraud on the court." Moore's Federal Practice § 60.21[4][c] (collecting cases for the proposition that perjury and non-disclosure by a single litigant did not rise to the level of fraud on the court).

*General Medicine, PC v. Horizon/CMS Health Care Corp.,* 2012 U.S. App. LEXIS 7186 (6th Cir. April 10, 2012), slip op. at 10-11 (Rule 60(d)(3) motion denied).

The Wright & Miller treatise notes that courts and commentators have offered three possible definitions for fraud on the court under Rule 60(d)(3). One definition is "fraud that attempts to subvert the integrity of the court itself, or that is perpetrated by officers of the court." The second is fraud amounting to an "unconscionable plan or scheme which is designed to improperly influence the court in its decision." The third is fraud "where injury to the public is primarily and extraordinarily involved." Wright & Miller, Federal Practice and Procedure § 2870 at pp. 576-77. The treatise authors summarized:

Perhaps the principal contribution of all these attempts to define "fraud upon the court" and to distinguish it from mere "fraud" is as a reminder that there is a distinction. Any fraud connected with the presentation of a case to a court is a fraud upon the court in a broad sense. That cannot be the sense in which the term is used in Rule 60(d)(3). The remedy for most cases of fraud must continue to be by motion under Rule 60(b)(3) or by an independent action., subject to the procedural limitations applicable to those remedies. The drafters must have conceived of "fraud upon the court," as they used that phrase, as referring to very unusual cases involving "far more than an injury to a single litigant."

Thus, the courts have refused to invoke this concept in cases in which the wrong, if wrong there was, was only between the parties in the case and involved no direct assault on the integrity of the judicial process. Nondisclosure by a party or the party's attorney has not been enough.

11

The cases in which it has been found that there was, or might have been, a "fraud upon the court," for the most part, have been cases in which there was "the most egregious conduct involving a corruption of the judicial process itself." The concept clearly includes bribery of a judge or the employment of counsel in order to bring an improper influence on the court.

*Id.* at 577-583 (footnotes omitted).

### C.    Argentina's allegations against Colella do not fit within any plausible interpretation of Rule 60(d)(3)

The facts in the present situation do not fit into Rule 60(d)(3) as interpreted in the case law. We have not found any case precedents applying Rule 60(d)(3) to set aside a previously entered judgment in circumstances remotely similar to those here.

- There are no allegations of fraud in connection with the *entry* of judgment in 04 Civ 2710 in 2006, or the *entry* of judgment in 05 Civ. 3789 in 2007. The cases in which vacatur was sought on grounds of fraud involve alleged fraud in connection with the entry of the judgment itself. Argentina's present allegations date from alleged events many years thereafter.

- Argentina admits that Colella still holds the bonds in 05 Civ. 3089, so there can be no allegation of fraud with respect to the validity of those claims.

- Argentina has no precedents where an allegation of fraud separated from the entry of judgment has been used to procure vacatur of the judgment.

- Argentina has no authority recognizing insinuation and suspicion as "clear and convincing" evidence of fraud sufficient to justify vacatur.

- The alleged fraud, even if true, would not have effects beyond the litigating parties here.

- The alleged fraud, even if true, would not involve any misconduct, corruption, or deception by attorneys or court officers.

- Argentina has not suffered any injury from alleged fraud in connection with any of the judgments in which it seeks vacatur (in 04 Civ. 2710, 05 Civ. 3089, 06 Civ. 15171). Argentina has not paid settlements or judgment recoveries in any of these situations.

- As a practical matter, injury would be implausible, if not impossible, because Argentina insists on delivery of actual bonds in return for settlements or judgment recoveries on these bonds.

12

Tellingly, *none* of the cases cited by Argentina on pp. 8-15 of its brief concerning courts' powers and the appropriate procedures to deal with allegedly fraudulent conduct by litigants involved efforts to vacate judgments. Rule 60(b)(3) and 60(c)(1) clearly occupy the field for such motions to vacate. Argentina's motion is long out-of-time.

### D.      Nor can Argentina seek vacatur under Rule 60(b)(6)

In its pre-motion letter on this matter, Argentina said it was seeking vacatur based on the Colellas' alleged "repeated and intentional misrepresentations amount to fraud on the Court" but did not cite any rule or other basis. 04 Civ. 2710, ECR No. 79. When we pointed out in response that such a motion was untimely under Rule 60, Argentina responded by invoking Rule 60(d)(3) and noted we had not cited authority making that rule inapplicable. 04 Civ. 2710, ECR No. 83 p. 1. Argentina has now changed its mind again, in that its motion does not rely on Rule 60(d)(3) and does not even acknowledge the one-year limitation in Rule 60(b)(3) and (c)(1) – instead, Argentina reverts to arguing about fraud in non-vacatur settings and "additionally" invoking Rule 60(b)(6) (Arg. Br. Point I at 8-16; Point II at 17-19).

Argentina undermines its own additional point by acknowledging, albeit in parentheses (Arg. Br. at 17), that Rule 60(b)(6)'s recognition of judgment vacatur "for any other reason that justifies relief" only applies "other than [for] the reasons in provisions 60(b)(1)-(5)". Of course, the reason in Rule 60(b)(3) is exactly Argentina's motion: vacatur for the reason of "fraud …, misrepresentation, or misconduct by an opposing party." *See* also Wright & Miller, Federal Practice & Procedure § 2864 at pp. 497-98. None of the cases cited at Arg. Br. pp. 17-18 involved fraud allegations against an opposing party, which is the situation here and which is covered and occupied by Rule 60(b)(3). Rule 60(b)(6) does not help Argentina here either.

## II.   EVEN IF A MERITS INQUIRY WERE PERMISSIBLE ON THIS MOTION, ARGENTINA'S PROPOSED EVIDENCE WOULD NOT JUSTIFY VACATUR

Without waiving their position that a motion to vacate the Colellas' money judgments is precluded as out of time under Rule 60, Colella also submits that the alleged evidence and argument by Argentina would not support judgment vacaturs.

Fraud to justify vacatur of judgments must be established by clear and convincing evidence. *Id.* § 2870 at p. 575 and cases cited.

### A.   If Argentina is arguing that Colella's judgment in 04 Civ. 2710 was fraudulently obtained, that argument is unfounded and judicially estopped

Argentina does not now appear to be contending that Colella engaged in fraud in obtaining the money judgment entered in 04 Civ. 2710 in 2006. Back then, as described above, Argentina was routinely raising questions about the validity of bondholders' claims, including Colella's; Argentina now acknowledges (Arg. Br. at 2) that it "objected that Plaintiffs' purported bond ownership documents were 'improperly certified or authenticated.'" Ultimately, Colella obtained a more current statement from Banca di Roma, and Judge Griesa entered the money judgment. Any attack by Argentina on those matters would be both untimely and judicially estopped.

### B.   Argentina cannot argue that Colella's judgment in 05 Civ. 3089 was fraudulently obtained, because it acknowledges that the bonds are still on deposit in Colella's account at Bance Carige

Argentina cannot plausibly contend that the money judgment entered in 05 Civ. 3089 in 2007 was obtained by fraud. As noted above, Argentina admits on the present motion (Arg. Br. at 8 n.4) that the bonds remain on deposit in Colella's account at Banca Carige currently.

C.     **The Gleizer withdrawal proceedings in 2011 do not support vacatur of the Colella judgments**

Argentina seeks vacatur of both Colella judgments by resurrecting the claim of fraud it tried to make in connection with Guillermo Gleizer's withdrawal from representing plaintiff Forgione in *Forgione,* 06 Civ. 15171 (Colella was not a party to that action). In seeking to withdraw, Mr. Gleizer stated that the account statement Forgione submitted in support of summary judgment was an altered version of the Banca Carige bank statement previously submitted by Colella in seeking summary judgment in 05 Civ. 3089. Argentina now says "Gleizer grouped these three clients together because he believed Plaintiffs were involved in the fraud" (Arg. Br. at 4); asserts that Gleizer argued that "Plaintiffs" [Argentina clearly means to include Colella] engaged in "'wrongful' and 'perhaps fraudulent' conduct" (*id.* at 4 n.3); and infers that "Gleizer seems to have 'ha[d] questions about the basis for the claims of these three people [Colella, Dussault, and Forgione]" in both cases.

Argentina's accusation is just brazen innuendo, particularly when presented as supposed fact. Argentina's statement in its brief (Arg. Br. at 1) that "Plaintiffs" – defined as the Colellas – "submitted a false account statement under the fake name 'Antonio Forgione' in an attempt to recover twice from the Republic on the same bonds" is unsupported by any fact. Mr. Gleizer never stated that Colella had engaged in misconduct. Mr. Gleizer did say the Forgione account statement was an "altered" version of the Colella statement (04 Civ. 2710 ECF No. 42 Tr. 5/24/11 at 9) but he did not allege any participation by Colella.

Argentina insisted on pursuing discovery, and Colella's replacement counsel at that hearing (Spencer) summarized the situation: "[W]hat appears to be the case is that someone got hold of their [Colella's] statement and misused it. There is nothing in any declaration from Banca Carige or Mr. Gleizer that suggests in any way that Mr. Colella or Ms. Dussault participated in

any wrongdoing here. … So, your Honor, if there were victims here or at least if there were parties whose documentation has been abused, it would be Colella and Dussault …. And asking [Colella] to provide information [discovery] about a bond that they still definitely own and on which they obtained a judgment, I think, four years ago at this point, [is stale]." *Id.* at 14.

Judge Griesa stated: "Well, I would agree with you. The information from the banker did not read to me to accuse Colella and Dussault of anything. So that's where I stand right now. …" *Id.* Argentina now submits that "Judge Griesa had no occasion to rule on Plaintiffs' wrongdoing" – again referring to the Colellas -- "because Plaintiffs had not received any funds, so Gleizer's application for contingency fees was premature." Arg. Br. at 5. Argentina's rendition is blatantly misleading: Gleizer sought contingency fees for representing the Colellas in *their* action, from which he was withdrawing, and Judge Griesa found that to be premature because there obviously had been no bond recovery in their action from which to award fees. The fact remains that the information at hand did not indicate any wrongdoing by Colella, which led Judge Griesa to refuse Argentina's request for discovery ("I am not going to sign a discovery order then," *id.* at 15); and Argentina never followed up with anything further even though Judge Griesa left that open. *Id.* Argentina cannot wring any evidence of wrongdoing out of this episode, much less clear and convincing evidence of fraud.

### D.   The Fiorentino declaration is inadmissible hearsay and is subject to doubt

The Colellas have submitted their joint declaration stating they still hold their bonds at issue in 04 Civ. 2710 and they deny the assertion in the Fiorentino declaration that their bonds are not on deposit at BCC-Lavoro,[1] Collela is presenting additional documents on this motion, C-

---

[1] The Colellas' declaration is submitted without prejudice to their position that declarations are inadmissible hearsay on the present motion because the declarant has not been cross-examined.

D Decl. Exh. A, which show transfer arrangements for the 04 Civ. 2710 bonds from the Colellas'

prior bank, UniCredit-Roma, to BCC-Lavoro in June 2018, specifically listing the bonds. The

Colellas previously submitted the standard year-end 2018 statement they received from BCC-

Lavoro showing the bonds on deposit there, RR Decl. Exh. C Part 1, which forms the basis for

their assertion that BCC-Lavoro does, or at least should, have their bonds.

The Fiorentino declaration is hearsay in any proceeding to determine contested factual

issues about Colella's bondholdings. The statements in the declaration have not been subject to

cross-examination. There is no hearsay exception for banker declarations. It is also of concern

that Mr. Fiorentino provided bank customer information to Cleary-Milan in violation of Italian

bank confidentiality and secrecy laws, as further described below.

The Colella declaration submitted herewith denies the assertions in the Fiorentino

declaration. At the very least, the sworn statement that the Colellas' bonds were transferred from

UniCredit-Roma to BCC-Lavoro in 2018 creates a contested fact issue as to whether the bonds

are on deposit at BCC-Lavoro. Resolution of that issue is impossible on a paper record.

Moreover, the Fiorentino declaration inherently does not deserve the gospel-truth status

Argentina contends it is owed. In addition to its un-cross-examined hearsay status, the

declaration is questionable because Mr. Fiorentino has not laid any foundation describing

whether he has access to all account records at the bank, and whether he made relevant inquiries:

for example, to the Colellas' account officer, to the department responsible for incoming

securities transfers from other banks, or indeed to UniCredit as a correspondent bank. Nor was

Mr. Fiorentino shown the year-end 2018 account statement Colella had furnished to Cleary.[2]

The Colellas believe that BCC-Lavoro in time will confirm that their bonds are indeed on deposit in their account at the bank, and that Mr. Fiorentino's assertions to the contrary are false, whether due to misinformation or some darker reasons. The Colellas hope they will obtain further confirmation of their bondholdings at BCC-Lavoro in time for submission on this motion.

EU and Italian banking secrecy and confidentiality laws prohibit banks from disclosing information about customers' accounts and financial affairs other than in response to proper official inquiries. Regulation (EU) No. 2016/679; It. Legislative Decrees 196/2003, amended, 101/2018 (Privacy Code). There is no indication that Cleary-Milan obtained any such authorization for its letter to BCC-Lavoro, or that BCC-Lavoro obtained permission to disclose information about the Colellas' accounts. Even assuming *arguendo* that a bank might be permitted to disclose whether a specimen account statement did or did not match normal bank formats, that would not extend to disclosure of particular customer information in response to a non-official inquiry. Mr. Fiorentino supplied information about Colella accounts to Cleary-Milan in violation of Italian law, and this Court must not accept that information.

### E.   The typographical errors pointed out by Argentina in Colella's May 22, 2019 account statement are not clear and convincing evidence of fraud

The Colellas have stated in their declaration that the May 22, 2019 interim account statement they furnished to counsel in June 2019 was obtained through their special request to

---

[2] There are specific indications of disparities between what BCC-Lavoro found internally and what Mr. Fiorentino described in his declaration.  As noted in the Collelas' declaration: "According to the documents provided with Argentina's motion for vacatur, the BCC-Lavoro legal office sent an email dated July 3, 2019, apparently in original English, to one of the Cleary-Milan lawyers, Francesca Gesualdi, stating that our year-end BCC-Lavoro statement 'does not conform to the documents held in our archives, which are in the name of Colella Michele alone, nor does the information contained in the aforementioned abstract reflect our accounting records, which do not show any securities trading for the year 2018 and until today.' The email thus did not state that our bonds were not on deposit in a BCC-Lavoro account; and of course there was not any 'trading' in the account because we did not instruct any sale of our bonds or any other transaction." C-D Decl. ¶ 23.

their account officer at their BCC-Lavoro branch in order to update their evidence of their holdings of their bonds in 04 Civ 2170 to a more current date than the year-end 2018 statement they had previously furnished. C-D Decl. ¶ 12.

Argentina has noted some typographical discrepancies between Colella's BCC-Lavoro year-end 2018 statement and the May 22, 2019 account statement. The year-end 2018 statement sent to Colella by BCC-Lavoro shows the appropriate bonds on deposit at the bank, reflecting a presumably successful transfer initiated by Mr. Colella in June 2018 from UniCredit-Roma to BCC-Lavoro. Argentina has not noted any discrepancies or other problems with the year-end 2018 statement itself.

Mr. Colella requested the interim statement at a local branch, and it was not prepared on a regular end-of-period basis, which the Colellas believe may explain its typographical mistakes. Although the Colellas do not know the status and reliability of BCC-Lavoro's bank-wide reporting methods for securities account holdings and for interim account statements, southern Italian banks are not known for their meticulous system controls, which may explain why Mr. Fiorentino was unable to locate the Colellas' bonds, which by all indications had been transferred in from UniCredit-Roma to BCC-Lavoro the prior year.

While Argentina asserts that the discrepancies between the two statements indicate forgery, the Colellas emphatically deny that assertion, and believe they will show that their bonds remain on deposit at BCC-Lavoro. The possible reasons for the typographical discrepancies in the May 22, 2019 account statement have not been examined in regular discovery procedures, and the statement itself does not provide clear and convincing evidence of any fraud by the Colellas.

F.      **Colella's decision not to consummate a Propuesta settlement
in 04 Civ 2170 does not support a finding of fraud**

Argentina also asserts that Colella sent in a signed settlement offer under the Propuesta

for the bonds in 04 Civ 2710 and then did not consummate the settlement. Argentina again

resorts to speculation to suggest that this means Colella does not hold the subject bonds.

The documents submitted with Argentina's motion show that the terms of this settlement

remained unspecified for several months, RR Decl. Exh. Q at p. 9 (Sleater to Sanchez Herrera

email 10/12/16). But even if Colella had entered into an iron-clad contract to settle and then

reneged, that would not provide clear and convincing evidence of fraud, or that he did not own

the bonds. Not all bondholders have accepted the Propuesta offers, and their failure to do so does

not indicate fraud. A more plausible inference with respect to the Colellas is that they would *not*

have ventured into settlement territory if they did not own the subject bonds, given that the

government required delivery of bonds in order to settle. Argentina does not cite any authority

holding that breach of a settlement contract (even if it occurred) could amount to clear and

convincing evidence of fraud.

## CONCLUSION

Despite the one-year deadline for moving to vacate judgments, Argentina has, more than

a decade after the judgments were entered, made an untimely motion amounting to a jury

argument based on innuendo and inadmissible evidence to try to deprive the Colellas of millions

of dollars of money judgments on their bonds. Argentina's motion should be denied.

Dated: October 4, 2019

MILBERG PHILLIPS & GROSSMAN LLP

_Michael C. Spencer_

Michael C. Spencer
One Pennsylvania Plaza, Suite 1920
New York, NY 10119
(212) 594-5300
Direct: (917) 969-5538

*Attorneys for Michele Colella and Denise Dussault*

21