UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHELE COLELLA and DENISE DUSSAULT, <br><br> *Plaintiffs*, <br><br> v. <br><br> THE REPUBLIC OF ARGENTINA, <br><br> *Defendant.* | 04-cv-2710 (LAP) <br> ("*Colella*") |
| MARCELO RUBEN RIGUEIRO, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> THE REPUBLIC OF ARGENTINA, <br><br> *Defendant.* | 05-cv-3089 (LAP) <br> ("*Rigueiro*") |
| ANTONIO FORGIONE, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> THE REPUBLIC OF ARGENTINA, <br><br> *Defendant.* | 06-cv-15171 (LAP) <br> ("*Forgione*") |

**REPLY MEMORANDUM OF LAW OF THE REPUBLIC OF ARGENTINA IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CLAIMS AND VACATE PLAINTIFFS' JUDGMENTS**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Carmine D. Boccuzzi, Jr.
Rahul Mukhi
One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Of Counsel*:
Rathna J. Ramamurthi

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES................................................................................ii

I.   PLAINTIFFS CONTINUE THEIR FRAUDULENT CONDUCT
     AND OTHERWISE FAIL TO REFUTE THE EVIDENCE
     AGAINST THEM.............................................................................. 1

     A.   Plaintiffs Have Not Refuted BCC's Confirmation Of Their
          Fraudulent Conduct And UniCredit Has Now Confirmed The
          Same. .................................................................................... 1

     B.   Lacking Any Contrary Evidence, Plaintiffs Try
          Unsuccessfully To Minimize The Evidence Of Their Fraud. ............................. 3

     C.   Plaintiffs Mischaracterize The *Forgione* Proceedings. ......................................... 6

     D.   Plaintiffs Are Bound By Their Settlement Agreement With
          The Republic. ........................................................................................ 7

II.  PLAINTIFFS' CONDUCT WARRANTS VACATUR OF THEIR
     JUDGMENTS............................................................................................. 8

III. THE REPUBLIC'S MOTION IS TIMELY .................................................... 9

CONCLUSION............................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amerisource Corp. v. Rx USA Int'l Inc.*,
No. 02-CV-2514 (JMA), 2010 WL 2730748 (E.D.N.Y. July 6, 2010) ............................ 9

*Aoude v. Mobil Oil Corp.*,
892 F.2d 1115 (1st Cir. 1989)........................................................................................ 9

*Arag-A Ltd. v. Republic of Argentina*,
178 F. Supp. 3d 192 (S.D.N.Y. 2016),
*aff'd sub nom. Attestor Value Master Fund v. Republic of Argentina*,
No. 16-1124, 2019 WL 5275550 (2d Cir. Oct. 18, 2019)................................................ 7

*Gen. Med., P.C. v. Horizon/CMS Health Care Corp.*,
475 F. App'x 65 (6th Cir. 2012) .................................................................................... 10

*Gleason v. Jandrucko*,
860 F.2d 556 (2d Cir. 1988) ......................................................................................... 10

*Hadges v. Yonkers Racing Corp.*,
48 F.3d 1320 (2d Cir. 1995) ......................................................................................... 10

*Hargrove v. Riley*,
No. 04-cv-4587 (DGT), 2007 WL 389003 (E.D.N.Y. Jan. 31, 2007) ............................ 2-3

*Lee v. Marvel Enters., Inc.*,
471 F. App'x 14 (2d Cir. 2012) ..................................................................................... 10

*Mills v. Noonan*,
No. 06-CV-00842 (MAT), 2019 WL 2361483 (W.D.N.Y. June 4, 2019)........................ 10

*Wilkin v. Sunbeam Corp.*,
405 F.2d 165 (10th Cir. 1968) ...................................................................................... 10

**Rules and Statutes**

Fed. R. Civ. P. 41(b) ..................................................................................................... 6

Fed. R. Civ. P. 60(d)(3) ................................................................................................. 10

Fed. R. Evid. 803(7)...................................................................................................... 5

In a brazen effort to avoid the consequences of their illicit conduct, Plaintiffs have doubled down and once again submitted false documents to this Court. In response to the Republic's motion, Plaintiffs filed a declaration on October 4, 2019 attaching documents they purportedly received from UniCredit, SpA ("UniCredit"). *UniCredit has now confirmed that those documents are also inauthentic.* This comes on the heels of an officer from a different bank (BCC)[1] providing an uncontroverted declaration attesting that Plaintiffs submitted another inauthentic bank document to this Court to prove purported bond ownership. Plaintiffs claim to be "astonished" by the BCC declaration, Pls. Decl. ¶ 22, but have produced no evidence to the contrary, apparently deciding to submit *additional* forgeries as part of their long-running scheme to obtain and maintain judgments against the Republic based on false documentation. Accordingly, Plaintiffs' claims should be dismissed and their judgments vacated.

## I.    PLAINTIFFS CONTINUE THEIR FRAUDULENT CONDUCT AND OTHERWISE FAIL TO REFUTE THE EVIDENCE AGAINST THEM

### A.    Plaintiffs Have Not Refuted BCC's Confirmation Of Their Fraudulent Conduct And UniCredit Has Now Confirmed The Same.

If Plaintiffs in fact believed they held bonds at BCC, they logically would have contacted BCC for an explanation of Mr. Fiorentino's declaration to the contrary, after learning of the declaration more than two months ago (and BCC too would have an interest in resolving the issue). Critically, *Plaintiffs do not even claim to have made any such outreach*, at most vaguely stating they hope to "obtain further confirmation of their bondholdings at BCC-Lavoro" and "believe they will show that their bonds remain on deposit at BCC-Lavoro." Pl. Br. 18-19.

---

[1] Capitalized terms are defined in the Republic's Mem. of Law (Sept. 6, 2019), ECF No. 89 ("Rep. Br."). "Pl. Br." is Pls.' Mem. of Law (Oct. 4, 2019), ECF No. 92. "Pls. Decl." is the Decl. of Michele Colella & Denise Dussault (Oct. 4, 2019), ECF No. 93. Unless otherwise noted, citations are to the *Colella* docket and exhibits of the Decl. of Rathna J. Ramamurthi (Sept. 6, 2019), ECF No. 90.

Plaintiffs acknowledge that they have an "account officer, Giancarlo Ferri," who is responsive to them, providing them "with a special BCC-Lavoro account statement" within at most a few weeks after they made a request in May 2019.  Pls. Decl. ¶ 20.  But Plaintiffs do not assert, much less provide evidence of, any effort to contact this account officer or anyone else at the bank for clarification regarding the serious allegations that their BCC account statement was a forgery.

Instead, Plaintiffs' principal "explanation" is that Mr. Fiorentino must be mistaken because Plaintiffs are sure that their bonds were transferred from UniCredit to BCC in June 2018.[2]  Even if so, that would not contravene Mr. Fiorentino's declaration that Plaintiffs did not hold the bonds six months later in December 2018 and do not hold them today.  What is more, the only "evidence" Plaintiffs submit to support their claim consists of documents allegedly sent from UniCredit to Plaintiffs in June 2018.  Remarkably, UniCredit has now confirmed that the documents Plaintiffs submitted to disprove their fraud are themselves inauthentic, are not found in UniCredit's records, and were not issued by UniCredit to Plaintiffs.  *See* Ex. 2 at 3, Decl. of Rathna J. Ramamurthi (Oct. 18, 2019).  UniCredit further states that Plaintiffs have not held Republic-issued bonds at UniCredit since 2008, *id.*, belying Plaintiffs' assertion under penalty of perjury that they received documents from UniCredit showing their "holdings of the bonds . . . totaling $4.55 million face amount as of June 29, 2018."  Pls. Decl. ¶ 19.[3]

---

[2] Plaintiffs also speculate that "Southern Italian banks are not known for their meticulous system controls, which may explain why Mr. Fiorentino was unable to locate the Colellas' bonds."  Pl. Br. 19.  BCC is a reputable, regulated bank.  And UniCredit, the largest bank in Italy and one of the largest financial institutions in the world, has now also confirmed Plaintiffs' illicit conduct.

[3] There are numerous obvious discrepancies on the face of the documents, including (1) the transfer request form's instructions would seem to prohibit the transfer at issue, since the transferor account names Colella alone while the transferee account names Colella *and* Dussault, *see* Pls. Decl. Ex. A at 3 ¶¶ 2(a), 4(a); (2) Plaintiffs inexplicably have the "bank copy" of the transfer request form, *id.* 1-6; (3) the letter appears to give tax information for the year 2017, *id.* 7, but the data in its enclosure is dated as of June 2018, *id.* 9; and (4) the enclosure is missing a solid line above the footer, *id.* 19, that appears on its other pages, *id.* 17-18.  *See Hargrove v.*

Even if Plaintiffs' "evidence" were authentic, it *does not* demonstrate a transfer in June 2018.  First, the undated transfer request form, Pls. Decl. Ex. A at 1-6, does not list any securities; it therefore does not confirm that UniCredit transferred Plaintiffs' bonds in June 2018 or that any transfer took place at all.  Second, the purported letter from UniCredit to Plaintiffs enclosing information for the year 2017 (seemingly for tax purposes), *id.* 7-9, lists the securities but makes no reference to a transfer to BCC or otherwise.  Plaintiffs elsewhere state that they received "documentation from both banks" confirming the transfer, Pls. Decl. ¶ 16, which they conspicuously have *not* produced, instead relying on documents that both prove nothing concerning their ownership *and* have been determined to be inauthentic.

**B.      Lacking Any Contrary Evidence, Plaintiffs Try Unsuccessfully To Minimize The Evidence Of Their Fraud.**

*First,* Plaintiffs misleadingly suggest that the Republic has only identified issues with the May 2019 account statement, which Plaintiffs try to account for by claiming (without evidence) that it was prepared through an interim process.  Pl. Br. 17-19.  For one, Plaintiffs are incorrect that Mr. Fiorentino was not "shown the year-end 2018 account statement." *Id.* 17-18.  It is *that very account statement*—which Plaintiffs assert was prepared through BCC's regular process— that is annexed to the Fiorentino Declaration, and that Mr. Fiorentino reviewed and declared inauthentic.  Fiorentino Decl. Annex A (Ex. A at 5-7).  Moreover, the Republic *has* noted "discrepancies or other problems with the year-end 2018 statement itself," Pl. Br. 19, even beyond the typographical inconsistencies between the December 2018 and May 2019 account statements.  While the December 2018 account statement lists administrative expenses for two

---

*Riley*, No. 04-cv-4587 (DGT), 2007 WL 389003, at *11 (E.D.N.Y. Jan. 31, 2007) (finding fraud on the Court where a "visual examination of the documents themselves makes it clear that many of the documents submitted by [plaintiff] are forgeries").

types of securities in the account—"Titoli di Stato" ("Government Securities") and "Altri Titoli" ("Other Securities")—the account is depicted as holding only one type of security—Republic-issued bonds.  *See* Account Statement Inconsistencies 5 ¶ 4 (Ex. D).  Based on the categories listed elsewhere in the document, Republic-issued bonds are "Titoli obbligazionari esteri," ("Foreign Bonds"), so the account would have no "Titoli di Stato."  *Id.*

*Second*, Plaintiffs try to distract from the inconsistencies in their documents by alleging "discrepancies in BCC-Lavoro's and Cleary-Milan's communications about this matter."  Pls. Decl. ¶ 23.  This is an obvious red herring.  The purported anomaly Plaintiffs identify is that the email to BCC was "apparently in original English."  *Id.*  It was not.  The Republic filed the original email *in Italian*, Fiorentino Decl. Annex B (Ex. A at 8), with a certified English translation, *id.* 15.  Based on the translation, Plaintiffs claim BCC only confirmed the bonds did not trade in 2018.  Pl. Br. 18 n.2.  Another mischaracterization.  Plaintiffs omit the rest of the sentence, stating Plaintiffs' purported account statement "does not conform to the documents held in [BCC's] archives" and does not "reflect [BCC's] accounting records."  Fiorentino Decl. Annex B (Ex. A at 15).  To the extent that there is any doubt about the meaning of the correspondence, the Fiorentino Declaration is clear that Plaintiffs' document "is not an authentic copy of an account statement issued by [BCC]"; that BCC "did not hold any securities on behalf of Mr. Colella on December 31, 2018 (the date of the Statement)"; and that as of the date of the declaration, BCC did "not hold any securities on behalf of Mr. Colella or Mrs. Dussault."  *Id.* ¶¶ 4-5 (Ex. A at 1-2); *see also id.* ¶ 6 (Ex. A at 2) (BCC email stated "the [account] Statement was inconsistent with [BCC]'s records for the reasons stated in the preceding two paragraphs.").

*Third*, Plaintiffs mischaracterize the evidence against them as "insinuation and suspicion."  Pl. Br. 12.  The Fiorentino Declaration and UniCredit documentation do not merely

suggest fraud—they state in no uncertain terms that Plaintiffs' documents are inauthentic.

*Fourth*, the Fiorentino Declaration is not "inadmissible hearsay." Pl. Br. 16-18. There is a hearsay exception where (1) "a record was regularly kept" for a certain kind of matter; (2) "evidence is admitted to prove that the matter did not occur or exist"; (3) and the opponent fails to show "a lack of trustworthiness." Fed. R. Evid. 803(7). This applies to the Fiorentino Declaration since (1) the bank keeps records of its customers' holdings and account statements; (2) the document is submitted to establish that Plaintiffs' purported bond holdings and account statements are not in those records; and (3) Plaintiffs have offered no evidence of untrustworthiness (beyond claiming the bank where they allegedly chose to deposit $4.5 million in securities is unreliable based on its geographical location alone, Pl. Br. 19).[4]

*Fifth,* Plaintiffs are incorrect that the Fiorentino Declaration violates data privacy regulations. *Id.* 17. *Plaintiffs* disclosed the allegedly private data by sending their purported account statement to the Republic and to the Court. A bank's confirmation of that document's inauthenticity is not a disclosure of confidential information in violation of any applicable law.

*Finally*, Plaintiffs try to stall by claiming there is at least a "contested fact issue as to whether the bonds are on deposit at BCC." *Id.* As described *supra*, even if Plaintiffs' "evidence" were authentic, it does not show a transfer of bonds to BCC in June 2018 or otherwise show their ownership of the bonds as of December 2018. Plaintiffs offer no plausible basis for the statements in their declaration, and cannot create a dispute of fact just based on their

---

[4] The same applies to the documentation submitted by UniCredit. Contrary to Plaintiffs' assertion, *id.* 17, Mr. Fiorentino *did* lay foundation by attesting that he personally reviewed BCC's records. Fiorentino Decl. ¶¶ 1, 4 (Ex. A at 1). And Plaintiffs do not raise such evidentiary issues about the substantially similar Formica Declaration, seeming to accept its conclusion that "Mr. Forgione" submitted an altered version of their account statement to seek a judgment. Pls. Decl. ¶ 10; Hr'g Tr. 13:2-8 (May 24, 2011), ECF No. 42.

unsupported say-so, particularly where two neutral third parties have provided uncontroverted evidence refuting Plaintiffs' claims and demonstrating their repeated fraud on the Court.

### C.   Plaintiffs Mischaracterize The *Forgione* Proceedings.

Plaintiffs insist they were not involved in the Forgione fraud, which they admit involved "a forgery derived from one of [their] account statements for [their] bonds in 05 Civ. 3089." Pls. Decl. ¶ 10. Plaintiffs still offer no proof, seeking to distance themselves by misstating the facts.

Plaintiffs first mischaracterize the actions of their former counsel Gleizer. Pl. Br. 15-16; Pls. Decl. ¶ 10. Gleizer moved to withdraw as counsel in 2011 not only for "Mr. Forgione," but also for Plaintiffs Colella and Dussault because he had doubts about all three individuals' claims. Rep. Br. 4-5.[5] Contrary to Plaintiffs' assertions, Gleizer did say "Colella had engaged in misconduct" and did allege "participation by Colella" in the Forgione fraud. Pl. Br. 15. The basis for Gleizer's contingency fee application was that "Mr. Colella's actions were wrongful and more, perhaps fraudulent, and that . . . took all the possibilities for [Gleizer] to collect [his] attorneys' fees." Hr'g Tr. 3:20-23 (Sept. 19, 2011), ECF No. 46. Gleizer said Plaintiffs "invented" Antonio Forgione and thereby "lied to [Gleizer] directly, lied to this Court." *Id.* 4:23-5:3; *id.* 7:15-18 (Gleizer's "opportunity to . . . earn a fee was interfered with by the wrongdoing of the plaintiff Colella."); *id.* 8:12-14 (Gleizer raised "wrongful activity by Mr. Colella").

Plaintiffs also misinterpret the Court's conclusions. There is no basis in the record for Plaintiffs' claim that Judge Griesa did not order further discovery because he was convinced of Plaintiffs' innocence; there was no need for further discovery since the contingency fee request before Judge Griesa was moot as there had been no recovery by any of Gleizer's clients. Rep.

---

[5] "Mr. Forgione" has not responded to this Motion, continuing his inaction for over eight years, and justifying dismissal of his claims for failure to prosecute pursuant to Fed. R. Civ. P. 41(b). *See* Rep. Br. 19-20.

Br. 5.  By Plaintiffs' own account, Judge Griesa's statement that the bank declaration "did not read to [him] to accuse Colella and Dussault of anything" was based on the evidence before him at the time.  Pl. Br. 6.  Since then, Plaintiffs have abused that benefit of the doubt, engaging in the *same fraudulent conduct* multiple additional times in their own names.  Rep. Br. 11.[6]

### D.      Plaintiffs Are Bound By Their Settlement Agreement With The Republic.

Plaintiffs' failure to honor their contractual obligation to deliver the bonds to the Republic in order to receive over seven million dollars further demonstrates the falsity of Plaintiffs' assertion that they hold the bonds.  Plaintiffs claim they "receded" from their settlement agreement with the Republic before it became binding because the terms "remained undefined by Argentina and unaccepted by [Plaintiffs] for months thereafter."  Pl. Br. 7; *see also* Pls. Decl. ¶ 16.  This is contradicted by counsel's confirmation that Plaintiffs received the countersigned settlement agreement in July 2016.  Email from J. Sleater to E. Sanchez Herrera (Ex. Q at 9); *see Arag-A Ltd. v. Republic of Argentina*, 178 F. Supp. 3d 192, 199 (S.D.N.Y. 2016) ("binding agreement" formed once the parties "exchange[] a countersigned" agreement) (internal quotations omitted), *aff'd sub nom. Attestor Value Master Fund v. Republic of Argentina*, No. 16-1124, 2019 WL 5275550 (2d Cir. Oct. 18, 2019).  The emails Plaintiffs cite, which are about finalizing the payment process in connection with the already countersigned settlement agreement, do not change this.  Pl. Br. 7.  The settlement agreement contemplates that the parties will finalize payment details after it comes into force.  Agreement Schedule ¶¶ ii, iii (Ex. R at 6).  As Plaintiffs' counsel knows well (from settlements of other claims), this is

---

[6] Plaintiffs' accusations that the Republic "cast[s] aspersions on all bondholder plaintiffs' claims" or is engaged in overzealous "docket clean up" are a mischaracterization.  Pl. Br. 5.  In decades of litigation involving hundreds of claimants, the only instances of fraud the Republic has raised to this Court are connected to Plaintiffs Colella and Dussault.  *See* Rep. Br. 17.

standard practice and in no way abrogates the existence of a binding contract.

Plaintiffs' remaining contentions also fail. *Aurelius*'s statement in *dicta* that a plaintiff who actually holds bonds is free to settle with the Republic or seek to enforce its judgments, Pl. Br. 6, only means a holder cannot be compelled to settle, not that holders who have entered into binding settlement agreements can thereafter disregard those contractual obligations at their whim. Plaintiffs also say that if they did not own the bonds, they would not have "ventured into settlement territory . . . given that the [Republic] required delivery of bonds in order to settle." *Id.* 20. It is not clear at all that Plaintiffs knew that they would have to deliver their bonds in order to receive the settlement payment. The sequence of events suggests that Plaintiffs likely thought that they could recover funds based on their judgment alone, and tried to rescind their agreement once they realized they had to deliver the bonds to get paid. Rep. Br. 6.

## II.   PLAINTIFFS' CONDUCT WARRANTS VACATUR OF THEIR JUDGMENTS

Plaintiffs fail to rebut that they submitted inauthentic documentation of bond ownership and thus their conduct squarely constitutes fraud on the Court. *Id.* 8-12.

*First*, Plaintiffs argue that there is no fraud on the Court since there is no "misconduct, corruption, or deception by attorneys or court officers." Pl. Br. 12. As Plaintiffs concede, this is not the only category of conduct that constitutes fraud on the Court. *Id.* 11. It is well-settled that submission of false documents to the Court by a party qualifies. Rep. Br. 9-10 (citing cases).

*Second*, contrary to Plaintiffs' assertion, Pl. Br. 12, Plaintiffs' conduct has prejudiced the Republic by hampering its ability to resolve the litigation against it, Rep. Br. 14, and requiring it to participate in proceedings regarding the fraud itself, *see* Pl. Br. 6 (describing the *Forgione* hearings as "quite extensive"). Plaintiffs exacerbated this prejudice by seeking to enforce their dubious judgments around the world, including in the Eastern District of New York, in Italy, and in Argentina. Pls. Decl. ¶¶ 8, 11; Rep. Br. 15. Plaintiffs' actions also have exposed third parties

to potential severe prejudice—for example, Plaintiffs' most recent execution attempt would have required third-party airline Aerolíneas Argentinas to suspend its flight operations at JFK.  In any event, prejudice is not required where, as here, a litigant acts in bad faith.  *See Amerisource Corp. v. Rx USA Int'l Inc.*, No. 02-CV-2514 (JMA), 2010 WL 2730748, at *7 (E.D.N.Y. July 6, 2010) (fraud's "actual effect . . . is not relevant" where litigant "clearly acted in bad faith with the intent to manipulate this litigation and interfere with the Court's fair adjudication."); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1120 (1st Cir. 1989) ("The failure of a party's corrupt plan does not immunize the defrauder from the consequences of his misconduct.").

*Third,* Plaintiffs claim that there is no fraud on the Court because the Republic has not alleged fraud in connection with the entry of the judgments. Pl. Br. 12, 14.  That is incorrect. The Republic previously asserted that Plaintiffs' conduct calls into question all of Plaintiffs' bond ownership documents, including those submitted for summary judgment. Rep. Br. 11.  In any event, Plaintiffs do not, and cannot, cite any authority that fraud on the Court is cabined to judgment entry.  Even if that is the posture of most fraud on the Court cases, it does not mean, of course, that a party can commit fraud on the Court post-judgment with impunity.

*Finally*, even if Plaintiffs hold some Republic bonds, that neither forecloses vacatur nor establishes that the judgments were validly obtained (the bonds could have been purchased later). Pl. Br. 12; Rep. Br. 14-16.[7]  To the extent Plaintiffs hold AN02 bonds, they have a contractual obligation to deliver as much as $3.5 million of that series to the Republic for settlement.

## III.    THE REPUBLIC'S MOTION IS TIMELY

Plaintiffs try to avoid the repercussions of their fraud on the Court by arguing that the time limit to bring it to the Court's attention has elapsed.  But as Plaintiffs themselves concede,

---

[7] Plaintiffs filed their declaration attaching false documents in both the *Colella* and *Rigueiro* actions, foreclosing any argument that their fraud on the Court did not involve both cases.

Rule 60(c)(1)'s one-year time limit applies to motions under Rule 60(b)(3) for fraud between the parties, but *does not* apply to fraud on the Court. *See* Pl. Br. 9; Fed. R. Civ. P. 60(d)(3) (Rule 60 "does not limit a court's power to . . . set aside a judgment for fraud on the court."); *Mills v. Noonan*, No. 06-CV-00842 (MAT), 2019 WL 2361483, at *2 (W.D.N.Y. June 4, 2019) ("There is no time limit for motions under F.R.C.P. 60(d)(3)."); *Wilkin v. Sunbeam Corp.*, 405 F.2d 165, 166 (10th Cir. 1968) ("Although the time for filing" a motion under Rule 60(b)(2) "ha[d] elapsed," a motion could still be brought for fraud on the Court.). The Republic's Motion is timely because Plaintiffs' fraud "affect[s] parties beyond the immediate litigants," Pl. Br. 2, as it was perpetrated not only against the Republic but also against the Court, *see* Rep. Br. 15-17.[8]

None of Plaintiffs' cases helps them. *Id.* 10-11. In *Lee v. Marvel Enters., Inc.*, 471 F. App'x 14, 16 (2d Cir. 2012), the conduct was not fraud on the Court because it took place out-of-court. *Gleason v. Jandrucko*, 860 F.2d 556, 559-560 (2d Cir. 1988), is inapposite because the litigant there had "ample opportunity in the prior proceeding to uncover the alleged fraud." There was no fraud on the Court in *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1326 (2d Cir. 1995) because the affiant "denied that he knew any facts that would contradict the truth of his statement" and the plaintiff "failed to produce persuasive evidence to suggest otherwise." *See also Gen. Med., P.C. v. Horizon/CMS Health Care Corp.*, 475 F. App'x 65, 71 (6th Cir. 2012) (conduct was not "intentionally false."). Here, by contrast, Plaintiffs *intentionally* sent false documents to the Court as recently as two weeks ago. Rep. Br. 13-14.

## CONCLUSION

Plaintiffs' claims should be dismissed with prejudice and their judgments vacated.

---

[8] Plaintiffs' "ability to respond" to this argument is not "unfairly hampered." Pl. Br. 10. The Republic is raising no new timeliness argument beyond those from its prior letters and brief.

Dated:  New York, New York
        October 18, 2019            CLEARY GOTTLIEB STEEN & HAMILTON LLP

                                    By:  _____
                                         Carmine D. Boccuzzi, Jr. (cboccuzzi@cgsh.com)
                                         Rahul Mukhi (rmukhi@cgsh.com)
                                         One Liberty Plaza, New York, New York 10006
                                         (212) 225-2000

*Of Counsel:*
Rathna J. Ramamurthi                     *Attorneys for the Republic of Argentina*