UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHELE COLELLA and DENISE DUSSAULT,<br><br>　　　　　　　　Plaintiffs,<br><br>-against-<br><br>THE REPUBLIC OF ARGENTINA,<br><br>　　　　　　　Defendant. | No. 04 Civ. 2710 (LAP) |
| MARCELO RUBEN RIGUEIRO, et al.,<br><br>　　　　　　　Plaintiffs,<br><br>-against-<br><br>THE REPUBLIC OF ARGENTINA,<br><br>　　　　　　　Defendant. | No. 05 Civ. 3089 (LAP) |
| ANTONIO FORGIONE, et al.,<br><br>　　　　　　　Plaintiffs,<br><br>-against-<br><br>THE REPUBLIC OF ARGENTINA,<br><br>　　　　　　　Defendant. | No. 06 Civ. 15171 (LAP)<br><br>MEMORANDUM & ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

　　　Before the Court is a motion brought by Defendant the Republic of Argentina ("Defendant" or "the Republic") to dismiss the claims of Plaintiffs Michele Colella ("Colella") and Denise Dussault ("Dussault" and, together with Colella, "Plaintiffs") and vacate Plaintiffs' judgments in the above-captioned actions.  Plaintiffs object to the motion.  (See Defendant's Memorandum of Law in Support of Motion to Dismiss and Vacate ("MTD"), dated Sept. 6,

2019 [dkt. no. 89 in 04 Civ. 2710];[1] Plaintiffs' Opposition to Defendant's Motion to Dismiss and Vacate ("Opp."), dated Oct. 4, 2019 [dkt. no. 92]; Defendant's Reply Brief ("Reply Br."), dated Oct. 18, 2019 [dkt. no. 95].)  For the reasons that follow, that motion is <u>GRANTED</u>.

I.   FACTUAL BACKGROUND

The facts relevant to this opinion span two decades and stem from three intertwined lawsuits before this Court: (1) <u>Michele Colella and Denise Dussault v. The Republic of Argentina</u>, 04 Civ. 2710 (the "Colella Case"); (2) <u>Marcelo Ruben Rigueiro, et al. v. The Republic of Argentina</u>, 05 Civ. 3089 (the "Rigueiro Case"); and (3) <u>Antonio Forgione, et al. v. The Republic of Argentina</u>, 06 Civ. 15171 (the "Forgione Case").  All three lawsuits seek recovery of funds from the Republic based on Plaintiffs' purported ownership of bond ISIN US040114AN02 (the "AN02 Bond").  The Republic has submitted documentation from two Italian banks, Banca di Credito Cooperativo Terra di Lavoro ("BCC-Lavoro") and UniCredit S.p.A ("UniCredit") which state that the bank documents Plaintiffs have submitted to this Court are inauthentic.  The Republic has also highlighted several other inconsistencies in Plaintiffs' story.

---

[1] For the sake of clarity and brevity, all docket cites hereinafter, unless noted otherwise, shall refer to the docket in <u>Michele Colella et al. v. The Republic of Argentina</u>, No. 04 Civ. 2710 (LAP).  All page numbers refer to the blue ECF page numbers at the top of the documents.

a. The Colella Case, No. 04 Civ. 2710.

i.  Case Background

In April 2004, Colella and Dussault commenced the Colella Case claiming to own $3.7 million of the AN02 Bond as well as $850,000 of bond ISIN US040114AZ32 (the "AZ32 Bond"). (See MTD at 7; Plaintiffs' Declaration, dated June 10, 2004 [dkt. no. 90-20].) Plaintiffs were represented by attorney Guillermo Gleizer ("Gleizer"). The Republic opposed Plaintiffs' summary judgment motion and claimed that Plaintiffs submitted "improperly certified or authenticated" bond ownership documentation. (See MTD at 7; Colella Summary Judgment Opposition at 7, dated Feb. 16, 2006 [dkt. no. 90-19].) In 2006, the Court determined that Plaintiffs "presented a facially valid bank statement," (see id.), and entered a judgment for Plaintiffs for $6,787,965.28. (See MTD at 7; Colella Judgment, dated June 1, 2006 [dkt. no. 90-18].)

Nearly a decade later, in April 2016, Plaintiffs entered into a settlement agreement with the Republic where Plaintiffs would receive $7,610,658 upon delivery of their $3.7 million of the ANO2 Bond and $850,000 of the AZ32 Bond. (See MTD at 10; Master Settlement Agreement, dated Apr. 5, 2016 [dkt. no. 90-23].) After several months, however, Plaintiffs failed to produce documents proving that they in fact owned the bonds. (See MTD at 11.) Plaintiffs offered shifting justifications for the delay at different times--for example, that they had difficulty "trying to

track down" the location of the $4.55 million worth of bonds, that they had difficulty setting up an account to make the transfer, and that the bonds may have been lost in a bank merger.  (See MTD at 11; 2016-2017 Correspondence [Email between Jessica Sleater and Osvaldo Colazo] at 2, dated June 17, 2017 [dkt. no. 90-22].)

Eventually, Plaintiffs claimed that they "reced[ed]" from the settlement agreement in April 2017 because the agreement was not countersigned by the Republic.  (See MTD a 11; 2019 Correspondence [from Plaintiffs to the Republic's Ministry of Economy and Finance] at 6, dated Apr. 7, 2017 [dkt. no. 90-21]; Opp. Br. at 24.)  The Republic contests this assertion and claims that it had no record of receiving Plaintiffs' withdrawal from the settlement agreement. (See MTD at 12.)  The Republic also notes that Plaintiffs have provided no "explanation for why [Plaintiffs'] counsel informed the Republic in June 2017 that Plaintiffs were still trying to locate and deliver the bonds" if Plaintiffs withdrew from the agreement in April 2017.  (Id.; 2016-2017 Correspondence [Email between Jessica Sleater and Osvaldo Colazo] at 2.)

## ii.   Inauthentic Bank Statements

In 2019, Plaintiffs maintained that they still possessed the Colella Case bonds, which they claim was evident because "[t]he paper trail support[ed] the Colella [Case] holdings moving from Banca di Roma to UniCredit-Roma and then a transfer . . . to BCC-Lavoro." (Opp. at 7.)  To bolster this claim, Plaintiffs submitted

statements to the Court purportedly from UniCredit-Roma and BCC-Lavoro. Unfortunately for Plaintiffs, both banks have found Plaintiffs' submitted statements to be inauthentic.

Starting in May 2019, in response to a request from the Republic, Plaintiffs provided the Court and the Republic with their purported bond-ownership documents, including a supposed statement from BCC-Lavoro (the "First BCC Statement"). (See May 15 Order, dated May 15, 2019 [dkt. no. 77].) The Republic accordingly contacted the banks listed on the statements seeking to authenticate the documents. (See MTD at 12.) Raffaele Fiorentino, head of the Legal Department at BCC-Lavoro, responded, declaring under penalty of perjury that Plaintiffs' account statement purporting to show $3.7 million of the AN02 Bond and $850,000 of the AZ32 Bond was inauthentic and that Plaintiffs do not currently hold any securities at BCC-Lavoro. (See Declaration of Raffaele Fiorentino at 2-3 ("Fiorentino Declaration"), dated July 18, 2019 [dkt. no. 90-1].)

Plaintiffs then provided the Republic with a copy of a supposedly more recent BCC-Lavoro account statement (the "Second BCC Statement"), which was purportedly apostilled. (See June 2019 Email from M. Spencer, dated June 28, 2019 [dkt. no. 90-2].) However, the Republic believed that "the apostilled version also had several discrepancies on its face, strongly suggesting it was doctored, even without the need for a forensic analysis." (See

MTD at 13; see also Annotated Purported Account Statements, dated Sept. 6, 2019 [dkt. no. 90-5].)

In August 2019, the Republic confronted Plaintiffs' counsel about the potentially fraudulent BCC-Lavoro statements and sought to dismiss Plaintiffs' claims.  Plaintiffs declined to agree to a voluntary dismissal of their claims.  Instead, they purported to be "astonished" at the Fiorentino Declaration and filed a police complaint against Fiorentino alleging he made a false statement. (See Declaration of Plaintiffs ("Plaintiffs' Decl.") ¶¶ 22, 24 dated Oct. 4, 2019 [dkt. no. 93].)  Plaintiffs also speculated that Fiorentino was probably wrong because he works for a "southern Italian bank[]" which is "not known for [its] meticulous system controls."  (See Opp. at 23.)

On top of this, Plaintiffs claimed to be surprised "because . . . [they] received records showing transfer of [their] bonds from UniCredit-Roma to BCC-Lavoro in 2018 . . . ."  (Plaintiffs' Decl. ¶ 22.)  Plaintiffs explained that in June 2018, they "instructed UniCredit bank in Rome to transfer [their] bonds at issue in [the Colella Case] to BCC-Lavoro . . . and received confirmatory documentation from both banks."  (Id. at 6.) Plaintiffs backed up their story by providing the Court with yet another bank statement, (see Plaintiffs' Decl. Exhibit A (the "UniCredit Statement"), dated June 29, 2018 [dkt. no. 93-1]), this one from UniCredit in Rome, stating that Plaintiffs "received from

UniCredit-Roma documents describing its transfer services from [Plaintiffs'] originating account and showing [Plaintiffs'] holdings of the bonds in [the Colella Case], totaling $4.55 million face amount as of June 29, 2018." (Plaintiffs' Decl. ¶ 19.)

Like BCC-Lavoro, however, UniCredit could not verify the authenticity of Plaintiffs' submitted bank statements.  Rather, the bank found that the statements 1) "do not conform" to the bank's standards, 2) are "not available in any of [UniCredit's] documental or electronic archives," and 3) were "never issued [by UniCredit] in the name of plaintiff."  (Letter from UniCredit (the "UniCredit Letter"), dated Oct. 18, 2019 [dkt. no. 94-2].) Furthermore, despite Plaintiffs' assertion of having $4.55 million of the Republic's bonds at UniCredit in 2018, UniCredit stated that "since November 7, 2008, [Colella] was no longer the holder at UniCredit SpA, of securities issued by the Argentine government." (Id.)

> b. The Rigueiro Case, No. 05 Civ. 3089

In March 2005, Colella and Dussault, with others, also commenced the Rigueiro Case, this time represented by the Dreier LLP law firm.  In this case, Plaintiffs claimed co-ownership of $1.3 million of the AN02 Bond.  (See Colella Declaration in Support of Motion for Summary Judgment in Rigueiro at 2-3, dated Jan. 17, 2006 [dkt. no. 90-17]; MTD at 8.)  The Republic suggested that Plaintiffs' claim of ownership of the AN02 Bond in the Rigueiro

Case might be duplicative of their claim of ownership of $3.7 million of the AN02 Bond in the Colella Case. (See Republic's Opposition Memo in Rigueiro at 4, dated Apr. 7, 2006 [dkt. no. 90-16]; MTD at 8.) Plaintiffs responded that Colella's account statements submitted to the Court demonstrated that bond interests in the two cases did not overlap. (See Rigueiro Summary Judgment Plaintiffs' Reply Brief at 7-8, dated Apr. 26, 2006 [dkt. no. 90-15]; MTD at 8.) The Court did not address the issue of whether the bonds were duplicative and thereafter entered an amended judgment for Plaintiffs. (See Rigueiro Amended Judgment, dated Jan. 17, 2007 [dkt. no. 90-14 in 04 Civ. 2710 and dkt. no. 24 in 05 Civ. 3089]; MTD at 8.)

Plaintiffs' $1.3 million AN02 Bond claim in the Rigueiro Case is yet to be resolved. Plaintiffs maintain that they currently hold the bonds. (See Opp. at 14.) In 2019, Plaintiffs submitted a bank statement which portrayed $1.3 million of the AN02 Bond in Plaintiffs' account, (see Email from M. Spencer at 9, dated May 15, 2019 [dkt. no. 90-3]), and Banca Carige S.p.A., the named bank, has confirmed that the statement is consistent with its records. (See MTD at 13 n.4; Opp. at 18.)

c. The Forgione Case, No. 06 Civ. 15171

In 2006, the Forgione Case commenced when a man purportedly named Antonio Forgione[2] retained Gleizer as counsel (on the same day Denise Dussault retained Gleizer for a separate action, Dussault v. Republic of Argentina, No. 06 Civ. 13085). (See MTD at 8; see also Forgione Retainer Agreement, dated Aug. 22, 2006 [dkt. no. 90-13].)  Similar to the Rigueiro Case, Forgione filed suit against the Republic claiming ownership of $1.3 million of the AN02 bond.  (See Forgione Plaintiff's Summary Judgment Declaration, dated July 23, 2007 [dkt. no. 90-11].)  Forgione submitted to the Court a bank statement from Banca Carige S.p.A. that was nearly identical to an account statement of Plaintiffs, but with a different address and name.  (See id.; MTD at 8.)  The Republic noted inconsistencies in the statement, and Forgione then submitted a second statement with the inconsistencies corrected. (See Letter from Carmine Boccuzzi to Gleizer, dated Sept. 28, 2007 [dkt. no. 90-10]; MTD at 9.)  The head of the legal department at Banca Carige, Giuseppe Formica, then submitted a sworn statement declaring that both of Forgione's account statements were inauthentic and were created by altering Colella and Dussault's account statements.  (See Declaration of Giuseppe Formica

---

[2] "Forgiare" is Italian for "forge," as in "to fabricate."  (See Letter Motion for Conference, n.1, dated Aug. 12, 2019 [dkt. no. 79].)

("Formica Declaration"), dated Nov. 12, 2010 [dkt. no. 90-6]; MTD at 9.)

At that point, Gleizer requested to withdraw as counsel for Forgione, Colella, and Dussault.  Gleizer also requested to recover legal fees that were supposed to be contingent upon recovery of the bonds.  (See Order to Show Cause, dated May 12, 2011 [dkt. no. 38]; MTD at 9.)

Gleizer told the Court that Colella "invented this Antonio Forgione.  There is no evidence that it exists.  He lied to me directly, lied to this Court . . . ."  (See Sept. 19, 2011 Tr. at 4:25-5:3 [dkt. no. 46]; MTD at 8.)  The Republic requested to pursue discovery on the potential fraud.  (See MTD at 10; Opp. at 19.)  The Court granted Gleizer's request to withdraw, (see Sept. 19, 2011 Tr. at 8:3; MTD at 10), but denied the Republic's request for discovery.  (See May 24, 2011 Tr. at 15:3-9 [dkt. no. 44]; MTD at 10.)  The Court further declined to rule on any wrongdoing of Colella, finding that "[i]t would be a great waste of time and resources to try to litigate at this point some issues raised by Mr. Gleizer about wrongful activity by Mr. Colella" because at that point no funds had been recovered from the Republic and, therefore, Gleizer's collection of contingent fees was a nonripe issue.  (Sept. 19, 2011 Tr. at 8:11-18.)  At this point, Forgione has never sought a judgment in the matter and, no judgment has been entered for him.

## II.  LEGAL STANDARDS

### a. Fraud on the Court

When there are allegations of fraud on the Court, this Court may "conduct an independent investigation in order to determine whether it has been the victim of fraud." Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991).  The Court may vacate a judgment pursuant to Federal Rule of Civil Procedure 60(b)(6) "if extraordinary circumstances are present or the failure to grant relief would work an extreme hardship on the movant." ISC Holding AG v. Nobel Biocare Fin. AG, 688 F.3d 98, 109 (2d Cir. 2012) (internal citations omitted).  In addition to the Federal Rules,[3] the Court has an "inherent power in imposing sanctions." Chambers, 501 U.S. at 42 (internal citations omitted).  "[T]he wielding of that inherent power is particularly appropriate when the offending parties have practiced a fraud upon the court."[4] Id.

For sanctions for fraud to be warranted it must be established by clear and convincing evidence that a party "has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the

---

[3] Rule 60 "does not limit a court's power to . . . set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3).

[4] "[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." Chambers, 501 U.S. at 50 (1991).

action." Scholastic, Inc. v. Stouffer, 221 F. Supp. 2d 425, 439 (S.D.N.Y. 2002), aff'd, 81 F. App'x 396 (2d Cir. 2003) (citing Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989)) (internal quotations omitted). "Falsifying evidence is sanctionable conduct," and "[s]ubmitting falsified evidence is also properly sanctionable." New York Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc., 432 F. App'x 25 (2d Cir. 2011) (internal citations omitted). Where a party acts in bad faith, "the actual effect of the [falsified evidence] on the litigation is not relevant to whether the conduct is sanctionable." Amerisource Corp. v. Rx USA Int'l Inc., No. 02 Civ. 2514 (JMA), 2010 WL 2730748, at *7 (E.D.N.Y. July 6, 2010), aff'd sub nom. New York Credit & Fin. Mgmt. Grp., 432 F. App'x 25. See also Aoude, 892 F.2d at 1120 ("[t]he failure of a party's corrupt plan does not immunize the defrauder from the consequences of his misconduct"). See also Minneapolis, St. Paul & Sault Ste. Marie Ry. Co. v. Moquin, 283 U.S. 520, 521–22, (1931) (a wrongdoer "will not be permitted the benefit of calculation, which can be little better than speculation, as to the extent of the wrong inflicted upon his opponent").

The Court retains broad discretion in fashioning sanctions for fraud on the court. The Court may mandate "attorneys' fees occasioned by the conduct in question" and enter a "judgment against the offending party." Cerruti 1881 S.A. v. Cerruti, Inc.,

169 F.R.D. 573, 583 (S.D.N.Y. 1996) (citing Penthouse Int'l, Ltd. v. Playboy Enters., Inc., 663 F.2d 371, 391 (2d Cir.1981)). "[D]ismissal is a harsh sanction to be used only in extreme situations." McMunn v. Mem'l Sloan-Kettering Cancer Ctr., 191 F. Supp. 2d 440, 461 (S.D.N.Y. 2002). When imposing dismissal as a sanction, a district court must also "consider alternative, less drastic sanctions." ComLab, Corp. v. Tire, No. 18-2872-CV, 2020 WL 2787620, at *3 (2d Cir. May 29, 2020) (summary order) (internal marks and citations omitted). The Court may also "vacate its own judgment upon proof that a fraud has been perpetrated upon the court." Chambers, 501 U.S. at 44 (internal citations omitted).

Rule 60(b)(6) allows a court to relieve a party from a final judgment for "any other reason that justifies relief,"[5] Fed. R. Civ. P. 60(b)(6). One justifiable reason for such relief is that "[o]nce a litigant chooses to practice fraud, that misconduct infects his cause of action, in whatever guises it may subsequently appear." Liva v. Cty. of Lexington, 972 F.2d 340 at *2 (4th Cir.

---

[5] Rule 60(b)(6) applies so long as Rules 60(b) (1-5) are not applicable. See ISC Holding AG, 688 F.3d at 109. The Court finds that is the case here. Further, while Rule 60(c)(1)'s one-year time limit applies to motions pursuant to Rule 60(b)(3) for fraud between the parties, the time limit does not apply to fraud on the Court. "There is no time limit for motions" to "set aside a judgment for fraud on the court." Mills v. Noonan, No. 06 Civ. 842 (MAT), 2019 WL 2361483, at *2 (W.D.N.Y. June 4, 2019) (citing Serszysko v. Chase Manhattan Bank, 461 F.2d 699, 702 (2d Cir. 1972)).

1992), as amended (Sept. 10, 1992) (quoting Aoude, 892 F.2d at 1121).  This is because a plaintiff who perpetuates "fraud upon the courts . . . comes[s] into court with unclean hands."  A.B. Dick Co. v. Marr, 197 F.2d 498, 502 (2d Cir. 1952).  The unclean hands doctrine "is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant."  Motorola Credit Corp. v. Uzan, 561 F.3d 123, 129 (2d Cir. 2009) (quoting Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814 (1945)).  The doctrine requires that litigants before the Court "shall have acted fairly and without fraud or deceit as to the controversy in issue."  Precision Instrument Mfg. Co., 324 U.S. at 814-15.  Under the doctrine, the principle that a litigant with unclean hands "should not be rewarded with a judgment--even a judgment otherwise deserved--where there is discretion to deny it, has a long and sensible tradition[6] in the common law."  ABF

---

[6] Historically, "where the legal judgment was obtained or entered through fraud, then a court of equity [would] interfere and restrain proceedings on the judgment which [could not] be conscientiously enforced."  Chevron Corp. v. Donziger, 974 F. Supp. 2d 362, 555 n. 1263 (S.D.N.Y. 2014) (internal marks and citation omitted).  "Under the present practice there is no longer a law side and an equity side of the court, but only a civil action in which all relief must be obtained that could formerly be secured either at law or in equity."  Id. at 555 n. 1265 (internal citation omitted).  See also In re Old Carco LLC, 423 B.R. 40, 51 (Bankr.

(Footnote continues on the following page.)

Freight Sys., Inc. v. N.L.R.B., 510 U.S. 317, 329 (1994) (Scalia, J., concurring in the judgment).

### b. Failure to Prosecute

In considering whether to dismiss a claim for failure to prosecute the Court should weigh whether:

> (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions.

McAllister v. Garrett, No. 10 Civ. 03828 (LAP) (HBP), 2015 WL 1623826, at *2 (S.D.N.Y. Mar. 11, 2015) (citing United States ex rel. Drake v. Norden Sys., Inc., 375 F.3d 248, 254 (2d Cir. 2004). While no one factor is dispositive "the first factor, the length of the plaintiff's delay, is an important factor and must be considered in light of all of the facts and circumstances." Charell v. Nichols, No. 97 Civ. 5552 (LAP), 1999 WL 253642 (S.D.N.Y. Apr. 29, 1999) (internal quotations omitted).

---

S.D.N.Y. 2010), aff'd, No. 10 Civ. 2493 (AKH), 2010 WL 3566908 (S.D.N.Y. Sept. 14, 2010), aff'd sub nom. Mauro Motors Inc. v. Old Carco LLC, 420 F. App'x 89 (2d Cir. 2011) ("A court may exercise its equitable power to set aside a fraudulent judgment to maintain the integrity of the courts and safeguard the public") (internal marks and citation omitted).

III. <u>DISCUSSION</u>

The Republic has moved to vacate Plaintiffs' judgments in the Colella and Rigueiro Cases based on Plaintiffs' apparent submission of fraudulent documents to this Court.  The Republic has also moved to dismiss claims related to the plaintiffs in all three of the above-captioned actions for fraud on the court.  In addition, the Republic has moved to dismiss Mr. Forgione's claim for failure to prosecute.  The motion for vacatur and dismissal is primarily based upon the following: (i) documentation from BCC-Lavoro stating Plaintiffs' First BCC Statement is inauthentic; (ii) documentation from UniCredit-Roma stating Plaintiffs' UniCredit Statement is inauthentic; (iii) Plaintiffs' submission of the Second BCC Statement with several glaring discrepancies; (iv) the Republic's previous vocalization that Plaintiffs may have submitted fraudulent documents to the Court in 2006; (v) Plaintiffs' shifting story for failing to perform their agreed settlement in the Colella Case; and (vi) the fact that a fraudulent bank statement of Plaintiffs was submitted to the Court in the Forgione Case.  For the following reasons, the Court grants the Republic's motion in full.

a. Fraud Analysis

Issues (i) BCC-Lavoro's declaration that Plaintiffs have submitted an inauthentic statement to the Court; and (ii) UniCredit-Roma's letter stating Plaintiffs have submitted an

inauthentic statement to the Court, establish Plaintiffs' fraud by clear and convincing evidence. Issues (iii) Plaintiffs' submission of the Second BCC Statement; (iv) the Republic's previous vocalization about Plaintiffs' potentially fraudulent conduct; (v) Plaintiffs' shifting story in the Colella Case; and (vi) the fraudulent bank statement in the Forgione Case, further support the Court's finding that Plaintiffs have engaged in fraud. Plaintiffs' conduct, therefore, warrants sanctions.

i. The First BCC Statement

The Fiorentino Declaration states under penalty of perjury that the First BCC Statement, which Plaintiffs submitted to this Court, is fraudulent. (See Fiorentino Declaration.) Plaintiffs have responded to the Fiorentino Declaration with what can only be described as a sideshow: proclaiming astonishment, filing a police complaint against Fiorentino, speculating that Fiorentino is wrong because he works for a "southern Italian bank[]" which is "not known for [its] meticulous system controls," and submitting two more questionable bank account statements (the UniCredit Statement and the Second BCC Statement discussed below).[7] (See Opp. at 7,

_____

[7] Plaintiffs have also raised several procedural arguments regarding the Frist BCC Statement: including 1) that the Fiorentino Declaration is inadmissible hearsay and 2) that the Fiorentino Declaration violates data privacy regulations. (Opp. at 16-18.) The Court finds such evidence is admissible under the hearsay exception because 1) "the evidence is admitted to prove that the

(Footnote continues on the following page.)

12, 21, 23; Plaintiffs' Decl. ¶¶ 22, 24.)   What Plaintiffs have failed to do, however, is submit any evidence of correspondence with BCC in which BCC retracts or disclaims authorship of the Fiorentino Declaration.   Given complete the lack of evidence demonstrating that the Fiorentino Declaration is somehow inaccurate, the Court accepts the Fiorentino Declaration to be true.   The Court, therefore, finds that Plaintiffs' submission of the fraudulent First BCC Statement presents clear and convincing evidence of a fraud upon the Court and represents sanctionable conduct.

### ii.  The UniCredit Statement

In response to allegations of submitting a fraudulent bank statement (aka the First BCC Statement), Plaintiffs submitted to the Court the UniCredit Statement.   Unfortunately for Plaintiffs, UniCredit has stated that the UniCredit Statement is fraudulent.  (See UniCredit Letter.)   Moreover, despite Plaintiffs' assertion that they had $4.55 million of the Republic's bonds at UniCredit in 2018, the UniCredit Letter states that "since November 7, 2008, [Colella] was no longer the holder at UniCredit SpA, of securities

---

matter did not occur or exist"; 2) "a record was regularly kept for a matter of that kind"; and 3) "the opponent does not show that the possible source of the information or other circumstances indicate a lack of trustworthiness."   Fed. R. Evid. 803(7). Further it is Plaintiffs not the bank who disclosed the allegedly private data by filing the First BCC Statement with this Court; BCC merely authenticated the information already disclosed.

issued by the Argentine government." (Id.)  Plaintiffs, yet again, have not produced evidence that would cast doubt on the substance of the UniCredit Letter.  Given that lack of evidence, the Court accepts the UniCredit Letter to be true.  The Court, therefore, finds that Plaintiffs' submission of the fraudulent UniCredit Statement is a fraud upon the Court and represents sanctionable conduct.

### iii.  The Second BCC Statement

In an effort to assuage suspicions of their fraudulent conduct, Plaintiffs also produced the Second BCC Statement.  On its face, however, the statement is unconvincing.  For example, the statement contains spelling, formatting, spacing, and page numbering that is inconsistent with other BCC statements.  (See Annotated Purported Account Statements.)  Plaintiffs themselves acknowledge that "some typographical discrepancies" are present in the statement, (Opp. at 23), but speculate that they were caused by the statement's being a product of a local BCC branch or not being prepared on "a regular end-of-period basis."  (Id.)  Not surprisingly, Plaintiffs provide no evidence for these contentions beyond their say-so.  The more plausible explanation, then, is that the Second BCC Statement is a fake.  In fact, the Court finds it difficult to look at the inconsistences of the Second BCC statement and think it is anything but a fraudulent document.  See Othman v. City of Chicago, No. 11 Civ. 5777, 2019 WL 556710, at *4

(N.D. Ill. Feb. 12, 2019) (explaining that in fraud on the Court cases, something that looks like "a duck . . . walk[s] and talk[s] like a duck," is likely to be a duck).  The Court, therefore, finds Plaintiffs' submission of the Second BCC statement supports the Court's finding that Plaintiffs have engaged in sanctionable conduct.

### iv.  The 2006 Objection

In 2006, the Republic opposed Plaintiffs' summary judgment motion and argued that Plaintiffs submitted "improperly certified or authenticated" bond ownership documentation.  (See Colella Summary Judgment Opposition at 7.)  The Court then determined that Plaintiffs "presented a facially valid bank statement," (see id.), and entered a judgment for Plaintiffs. (See Colella Judgment.) Now, the Court agrees with the Republic that "facial validity may have been sufficient then, but recent developments [detailed herein] . . . undermine Plaintiffs' claims that they hold the bonds."  (MTD at 7-8.)  The Court finds Plaintiffs' probable submission of fraudulent documents in 2006 further supports the Court's finding that Plaintiffs have engaged in sanctionable conduct.

### v.  Plaintiffs' Shifting Story

In April 2016, Plaintiffs entered into a settlement agreement with the Republic where Plaintiffs would receive compensation upon delivery to the Republic of their ANO2 bonds.  (See Master

20

Settlement Agreement.)   Plaintiffs, however, failed to produce ownership documents for the bonds, (MTD at 11), and changed their story multiple times regarding the reasons for the delay, (see 2016-2017 Correspondence [Email Between Jessica Sleater and Osvaldo Colazo]; See also supra at 3-4.)   Plaintiffs conveniently claimed to have "reced[ed]" from the settlement agreement in April 2017, (see 2019 Correspondence [from Plaintiffs to the Republic's Ministry of Economy and Finance] at 6), however, the Republic contested the rescission claiming that it had no record of receiving Plaintiffs' withdrawal. (See MTD at 12.)   The Republic has entered over 1,000 settlement agreements regarding its bonds, and no other bondholder has failed to deliver the bonds. (See MTD at 6.)   The Court finds Plaintiffs' shifting story and nonperformance of the Colella Case settlement agreement further supports the Court's finding that Plaintiffs have engaged in sanctionable conduct.

> vi. The Forgione Case

In the Formica Declaration in the Forgione Case, the head of the legal department at Banca Carige declared under penalty of perjury that both of Forgione's submitted account statements were inauthentic and were created by altering Colella and Dussault's account statements.   (See Formica Declaration.)   After the publication of the Formica Declaration, Plaintiffs' former attorney, Gleizer, requested to withdraw as counsel for Forgione,

Colella, and Dussault.  (See Order to Show Cause.)  Gleizer told the Court that Colella "invented this Antonio Forgione.  There is no evidence that it exists.  He lied to me directly, lied to this Court . . . ."  (See Sept. 19, 2011 Tr. at 4:25-5:3.)  At the time, the Court granted Gleizer's request to withdraw, (see Sept. 19, 2011 Tr. at 8:3), but denied the Republic's request for discovery on the issue of fraud by Plaintiffs.  (See May 24, 2011 Tr. at 15:3-9.)  Now, based on the evidence set out here, the Court considers that this incident is part of a larger pattern of fraud by Plaintiffs, spanning two decades.  The Court, therefore, finds Plaintiffs' alleged fraudulent conduct in the Forgione Case further supports the Court's finding that Plaintiffs have engaged in sanctionable conduct.

   b. Sanctions in the Colella and Rigueiro Cases

   Having determined that Plaintiffs perpetrated a fraud on the Court through their submission of fake documents and other untruthful acts, (see supra at 16-22), the Court must determine what sanctions are commensurate with the misconduct.  In determining what sanctions to impose the Court considers whether "the misconduct was the product of intentional bad faith; whether and to what extent the misconduct prejudiced the [defendants]; whether there was a pattern of misbehavior rather than an isolated instance; whether and when the misconduct was corrected; [and]

whether further misconduct is likely to occur in the future."
Scholastic, 221 F. Supp. 2d at 444 (internal citation omitted).

The Court determines that the above Scholastic factors weigh heavily in favor of vacatur of Plaintiffs' judgments and dismissal of Plaintiffs' claims in the Colella case.  First, Plaintiffs' misconduct--the submission of falsified evidence to the Court--was no doubt the product of "intentional bad faith." Id.  Indeed, the Court struggles to conjure examples of bad faith conduct by litigants more egregious than using fake documents to secure a judgment.  See Lawrence, 2018 WL 3611963, at *7 ("Dismissal is particularly appropriate where a plaintiff seeks to enhance the merits of her case with fabricated evidence . . .") (citation omitted).  Second, Plaintiffs' misconduct no doubt prejudiced the Republic--after all, it was the Republic that was on the hook for any judgments secured by Plaintiffs' fraud and the Republic that had to investigate and litigate Plaintiffs' fraud.   Third, Plaintiffs have "failed to correct [their] fraudulent submissions," despite the fact that they have been "confronted with evidence undermining the validity of those submissions." Scholastic, 221 F. Supp. 2d at 444.  Indeed, Plaintiffs' fraud is made more egregious by the fact that they have doubled down on their deceit not with evidence, but with outlandish and, in some

cases, offensive,[8] arguments.  Finally, because Plaintiffs have repeatedly doubled down on their fraudulent conduct, (see supra at 16-22), the relevant misconduct is not cabined to an "isolated instance."  Id.  As a consequence, the severe sanction of vacatur and dismissal is justifiable pursuant to Rule 60(b)(6) and the Court's inherent authority.

With respect to the Rigueiro Case, the Court also finds that dismissal of Plaintiffs' claims with prejudice and vacatur of Plaintiffs' judgments is appropriate pursuant to Rule 60(b)(6) and the Court's inherent authority.  Plaintiffs assert that the Court should deny the Republic's motion for vacatur and dismissal in the Rigueiro Case because the Republic "admits that Colella still holds the bonds in 05 Civ. 3089, so there can be no allegation of fraud with respect to the validity of those claims." (Opp. at 16.)  This assertion, however, "will not wash" for five reasons. Aoude, 892 F.2d at 1121.

First, the finding of fraud on the Court "calls for nothing less than a complete denial of relief" for Plaintiffs.  Chevron Corp., 974 F. Supp.2d at 563 (citing Hazel-Atlas Glass Co. v.

---

[8] Particularly unattractive is Plaintiffs' argument that the Fiorentino Declaration is inaccurate because it was produced by a "southern Italian bank[]."  (Opp. at 23.)  Plaintiffs have suggested that banks in Southern Italy are not known for their "meticulous system controls," (id.), but, as is their wont, have provided no evidence to support this fact.  Needless to say, this is not a winning formula.

Hartford-Empire Co., 322 U.S. 238, 250 (1944)).  For example, in Aoude, the First Circuit Court of Appeals affirmed a district court's dismissal of (1) a case in which plaintiff submitted fake documents to the court, as Plaintiffs have done here, and (2) a parallel case brought by the same plaintiff.  The First Circuit determined that the parallel case was "appropriately jettisoned" because "[o]nce a litigant chooses to practice fraud, that misconduct infects his cause of action, in whatever guises it may subsequently appear."  892 F.2d at 1121.  In affirming the district court, the First Circuit emphasized where Plaintiffs engaged in fraud are "caught red-handed," they "cannot simply walk away from a case, pay a new docket fee, and begin afresh."  Id.

The same principle applies here.  While the First Circuit's ruling in Aoude is not binding on this Court, it nonetheless is a justifiable reason for relief under Rule 60(b)(6) as it aligns neatly with the doctrine of unclean hands which "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief."  Motorola Credit Corp., 561 F.3d at 129.  And here, the Court finds there are sufficient similarities between the Colella and Rigueiro Cases to apply the Scholastic analysis of Plaintiffs' conduct in the Colella Case (see supra at 22-24) to the Rigueiro Case as well. In particular, the Court finds no reason why Plaintiffs, who have already demonstrated their willingness to submit fake evidence to

the Court in the Colella Case, would not engage in "further misconduct . . . in the future" in the Rigueiro Case. Scholastic, 221 F. Supp. 2d at 444 (internal citation omitted).

Second, Plaintiffs' disruption of their own lawsuit, the Rigueiro Case, through their fraudulent actions in the Colella Case, supports dismissal of the Rigueiro Case. The Court's inherent power to impose sanctions "reaches both conduct before the court and that beyond the court's confines." Chambers, 501 U.S. at 44. Given the similarities between the two cases, Plaintiffs' sanctionable conduct in the Colella Case significantly disrupted the Rigueiro Case. Plaintiffs' submission of fake documents in the Colella Case: 1) diverted the Republic and the Court's resources from adjudicating the Rigueiro Case, 2) forced the Republic to construct its litigation strategy in the Rigueiro Case based on, among other things, Plaintiffs' fraudulently based position in the Colella Case, and 3) called in to question whether Plaintiffs have engaged in similar fraudulent conduct in the Rigueiro Case.

Third, vacatur and dismissal of the Colella Case alone is likely an insufficient sanction for Plaintiffs. Sanctions are necessary "to penalize those whose conduct may be deemed to warrant such a sanction." ComLab, Corp., 2020 WL 2787620, at *3 (quoting Valentine v. Museum of Modern Art, 29 F.3d 47, 50 (2d Cir. 1994)). Given that Plaintiffs likely do not possess any of the $3.7 million

of the ANO2 Bond in the Colella Case,[9] foreclosing Plaintiffs'
ability to collect on bonds they presumably do not own is not a
punishment.   Furthermore, allowing Plaintiffs to maintain their
presumably valid claims in the Rigueiro Case would create a
perverse incentive for Plaintiffs--where the only consequence of
submitting fake bond ownership documents to the Court, as seen in
the Colella Case, is losing the ability fraudulently to cash in
twice.  See Lawrence, 2018 WL 3611963, at *7 (dismissing a claim
with prejudice because "merely excluding the fabricated evidence
would not only fail to address Plaintiff's other misconduct, but
would also send the Plaintiff, and  future litigants like her, the
message that they have everything to gain, and nothing to lose, by
continuing to submit fabricated evidence") (internal marks and
citation omitted).

Fourth, in order specifically to deter Plaintiffs and
generally to deter others from replicating Plaintiffs' fraud, the
Court must dismiss the Rigueiro Case.  The Court must "protect the
sanctity of the judicial process--to combat those who would dare
to practice unmitigated fraud upon the court itself."  McMunn, 191
F. Supp. 2d at 461 (quoting Aoude, 892 F.2d at 1119).  Dismissal
is available to the Court "not merely to penalize those whose

---

[9] See supra at 4-7; UniCredit Letter (noting that "since November
7, 2008, [Colella] was no longer the holder at UniCredit S.p.A.,
of securities issued by the Argentine government").

conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." Skywark v. Isaacson, No. 96 Civ. 2815 (JFK), 1999 WL 1489038, at *15 (S.D.N.Y. Oct. 14, 1999) (citing Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976)). Dismissal of the Rigueiro Case for deterrence purposes is appropriate given: 1) the gravity of Plaintiffs' fraud in the Colella Case, 2) the overlap between the Colella Case and the Rigueiro Case, and 3) that lawsuits seeking recovery of the Republic's bonds are commonplace in this Court.

Finally, that Plaintiffs' Rigueiro Case documents match the fraudulently submitted Forgione Case documents, (see supra at 9-10, 21-22), is a factor supporting the finding that sanctions are appropriate in the Rigueiro Case.

In sum, this Court has "considered the full complement of options available to it under the applicable rules and its inherent authority." ComLab, Corp., 2020 WL 2787620, at *3 (internal citation omitted). Here, Plaintiffs' actions are "the essence of a fraud upon the court." McMunn, 191 F. Supp. 2d at 445. As such, for the reasons stated above, vacatur of the judgments and dismissal of both the Colella and Rigueiro cases are the only

sufficient sanctions the Court can impose.[10]   The Court vacates the judgment and dismisses the Colella Case because "when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process, it can fairly be said that he has forfeited his right to have his claim decided on the merits." McMunn, 191 F. Supp. 2d at 445.   The Court vacates the judgment and dismisses the Rigueiro Case because the principle that a litigant with unclean hands "should not be rewarded with a judgment--even a judgment otherwise deserved-- where there is discretion to deny it, has a long and sensible tradition in the common law." ABF Freight Sys., Inc., 510 U.S. at 329.

c. Failure to Prosecute in the Forgione Case

The Republic's motion to dismiss the Forgione Case for failure to prosecute is granted.[11]   In considering whether to dismiss a claim for failure to prosecute, pursuant to Federal Rule of Civil Procedure 41(b), the Court should weigh whether:

> (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was

---

[10] The Court imposes sanctions pursuant to the Court's inherent authority and Rule 60(b)(6) because Plaintiffs' conduct presents "extraordinary circumstances," and "failure to grant relief would work an extreme hardship" on the Republic.   ISC Holding AG, 688 F.3d at 109.

[11] Because the Court is granting the Republic's motion to dismiss the Forgione Case pursuant to Rule 41(b), the Court need not rule on the Republic's fraud on the court arguments in the Forgione Case.

likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions.

McAllister, 2015 WL 1623826, at *2.  A court must also ask "whether the failures to prosecute were those of the plaintiff, and whether these failures were of significant duration."  Id. at *3.  The Court finds that all five factors weigh in favor of dismissal for failure to prosecute in the Forgione Case.

First, Forgione, if he exists, is the cause of the delay as he has not been heard from since 2011.  This Court has dismissed claims in which plaintiffs have failed to prosecute their cases in far shorter periods of time.  See id. ("[f]ailure to communicate with opposing counsel or the Court for over a year certainly constitutes an unreasonable delay").  Second, Forgione has been given notice that his claim could be subject to dismissal should he not respond to the Court.  (See Order at 6, dated Nov. 6, 2018 [dkt. no. 48 in 06 Civ. 15171]; Memo Endorsement at 2, dated Dec. 17, 2018 [dkt. no. 51 in 06 Civ. 15171]; Order, dated July 18, 2019 [dkt. no. 54 in 06 Civ. 15171].)  Third, the Republic is prejudiced by Forgione's failure to prosecute, "as the events recede further into the past and evidence becomes more stale." U.S. ex rel. Pervez v. Maimonides Med. Ctr., No. 06 Civ. 4989 (LAP), 2010 WL 890236, at *3 (S.D.N.Y. Mar. 9, 2010).  Fourth, the need to clear the Court's calendar far outweighs any claims of

Forgione, which he has not bothered to litigate for the past nine years (presumably because he does not exist).  Finally, Forgione's "historical pattern of not responding to court orders in this case gives this Court no reason to believe that lesser sanctions would be effective in compelling Plaintiff to take action in this case." McAllister, 2015 WL 1623826, at *4.

IV.  CONCLUSION

For the forgoing reasons, the Republic's motion to dismiss Plaintiffs' and Forgione's claims and vacate their judgments [dkt. no. 88 in 04 Civ. 2710; dkt. no. 159 in 05 Civ. 3089; dkt. no. 59 in 06 Civ. 15171] is granted in full.  Specifically:

- Michele Colella and Denise Dussault v. The Republic of Argentina, 04 Civ. 2710: the judgment [dkt. no. 23 (viewable on ECF as dkt. no. 90-18)] is vacated, and the claims of Michele Colella and Denise Dussault are dismissed with prejudice;

- Marcelo Ruben Rigueiro, et al. v. The Republic of Argentina, 05 Civ. 3089: the amended judgment [dkt. no. 24 in 05 Civ. 3089 (viewable on ECF as dkt. no. 90-14 in 04 Civ. 2710)] is

vacated, and the claims of Michele Colella and Denise Dussault are dismissed with prejudice;

- <u>Antonio Forgione, et al. v. The Republic of Argentina</u>, 06 Civ. 15171: all claims are dismissed with prejudice for failure to prosecute.

Any arguments not specifically addressed by the Court are considered without merit or moot.

The Clerk of the Court is directed to mark these actions (04 Civ. 2710, 05 Civ. 3089, and 06 Civ. 15171) closed and all pending motions denied as moot.

**SO ORDERED.**

Dated:   New York, New York
         August 13, 2020

_____
LORETTA A. PRESKA
Senior United States District Judge